UNITED STATES of America,
Appellee,

v.

Nicholas DeKUNCHAK, Appellant.

No. 891, Docket 72–1339.

United States Court of Appeals,
Second Circuit.

Argued July 19, 1972.

Decided Sept. 26, 1972.

433

Paul D. Lazarus, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., for the E. D. N. Y., David G. Trager, Asst. U. S. Atty., of counsel), for appellee.

Harvey Weissbard, Orange, N. J. (Querques, Isles & Weissbard, Orange, N. J., on the brief), for appellant.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Nicholas DeKunchak from a judgment of conviction in

the United States District Court for the Eastern District of New York, entered after a jury trial before the Hon. John R. Bartels. DeKunchak was indicted on three counts. He was convicted on Count II, charging the transporting and causing to be transported in interstate commerce a quantity of Vitamin B-12 concentrate, knowing the same to have been stolen, in violation of 18 U.S.C. §§ 2314 and 2. He was sentenced to a term of 18 months imprisonment on this charge. He was also convicted on Count III, of receiving, selling and disposing of the same material, which was part of and constituted interstate commerce, knowing it to have been stolen, in violation of 18 U.S.C. §§ 2315 and 2. On this count he was placed on probation for three years following the completion of his jail sentence.[1] Judgment is affirmed.

In May 1968 a five drum shipment of Vitamin B-12 was shipped by truck from Lederle Laboratories, Pearl River, New York to the Spector Motor Freight warehouse in Secaucus, New Jersey to be forwarded to the Upjohn Company in Kalamazoo, Michigan. The shipment was from a batch designated "161" and each drum bore the packaging control number "A 180046". In some manner not disclosed in the record, the shipment disappeared and was never delivered to Upjohn in Kalamazoo. Upjohn made a claim against Spector for the value of the goods and was reimbursed in the sum of $6,900, the full amount of its claim. On July 24, 1968 five drums of Vitamin B-12 and five shipping labels, all bearing the control number "A 180046" and all fitting perfectly on the drums from which they had been removed, were delivered in Manhattan by one Joseph Zarrett to Irwin W. Weinstein, a United States Customs Agent, who was acting in an undercover capacity. There was testimony that the B-12 delivered to Weinstein matched a sample of the "161" batch and although it is possible, it would be unusual that another batch would identically match the original Lederle product. Weinstein paid $3,000 for the five drums which is less than half its value, as evidenced by Spector's payment to Upjohn.

The transactions which preceded the transfer of the B-12 in Manhattan from Zarrett to Agent Weinstein were obviously not conducted in a normal business atmosphere and the government's case was principally based on the testimony of Stanley Steinschreiber, a pharmaceutical manufacturer from Long Island, who was admittedly interested in dealing in stolen chemicals and pharmaceuticals. Steinschreiber visited the New Jersey plant of one Frank Alberte early in 1968 to purchase equipment. Steinschreiber advised Alberte of his interest in stolen chemicals and Alberte told him to contact his accountant, Zarrett, who was described as having the proper contacts for merchandising stolen drugs. Alberte also introduced Steinschreiber as "one of the boys" to the defendant Bosonac, who later asked him if he could get rid of a quantity of ephedrine hydrochloride. Steinschreiber stated it was necessary for him to know who had been the consignee in order to preclude a sale to the same party from whom it had been stolen. This possibility is not only embarrassing but dangerous in this type of business. Bosonac assured him that the goods had been shipped from Europe consigned to the Gaines Chemical Company. Steinschreiber advised Zarrett that the ephedrine was available and Zarrett in turn contacted undercover agent Weinstein who agreed to pay $3,000 for the chemical.

In the spring of 1968 Alberte introduced Steinschreiber to the defendants DeKunchak and Deo at a diner in New

---

1. Count I of the three count indictment, charging DeKunchak and his co-defendants Joseph Deo and Robert Bosonac with conspiracy to sell and dispose of the stolen pharmaceutical in violation of Title 18 U.S.C. § 2315, was dismissed on their motion for a judgment of acquittal at the conclusion of the Government's case. Deo who had been indicted as a co-defendant with DeKunchak on both substantive counts was acquitted.

Jersey. DeKunchak then advised Steinschreiber that the ephedrine deal was really his and Deo's and that Bosonac was simply working on a commission basis. At the meeting DeKunchak also offered Steinschreiber quantities of Vitamin B-12 concentrate. After some complications not material to this appeal, the ephedrine sale to Weinstein was completed and the record establishes that the chemical had been stolen from Gaines Chemical Company.

On July 3, 1968 Agent Weinstein again met with Zarrett and indicated his interest in Vitamin B-12 concentrate. Zarrett produced an original drum label and indicated that five drums were available for $7,000. Steinschreiber testified that on this sale he was acting as an agent for DeKunchak and Deo and was taking the B-12 on consignment only. His deal was that if he could sell the B-12 he would pay DeKunchak $1,000 and retain the balance as his commission. On July 24th Weinstein advised Zarrett that he was only willing to pay $3,000 and this price was agreed upon. Zarrett stated that his "partner" would get the merchandise in New Jersey and Zarrett would make delivery at a designated place in Manhattan later that afternoon. Steinschreiber drove to Newark in his Lincoln Continental, which carried New York plates, and met DeKunchak in Newark, New Jersey the same afternoon. They met Deo at his garage and the three men loaded the drums of Vitamin B-12 into the trunk of Steinschreiber's car. Steinschreiber then drove from Newark to his home in Valley Stream, Long Island. There he met Zarrett who transferred the five drums from the Lincoln into his own car. Federal agents had observed Steinschreiber's activities in New Jersey but lost him in traffic before he left the state. However, his Long Island house was also under surveillance and the transfer to Zarrett's car was observed. Later in the afternoon Zarrett met Weinstein in Manhattan at the designated meeting place. He transferred to him the five drums of Vitamin B-12 as well as the remaining four original labels which were identical to the one already received. Weinstein paid Zarrett $3,000. Zarrett then paid Steinschreiber, who returned to New Jersey and paid DeKunchak $1,000. DeKunchak then asked Steinschreiber whether he would be interested in more stolen chemicals.

No defendant testified in this case and the only defense witness was Alberte who admitted that he knew Steinschreiber, Zarrett and Bosonac, but stated that he had never met Deo and DeKunchak until the present litigation.

Appellant argues that his motion for acquittal on Counts II and III should have been granted because there was a failure to establish that the five drums of B-12 delivered to Steinschreiber by DeKunchak and Deo in Newark were the same five drums delivered to Weinstein by Zarrett later that afternoon, and further that there was a failure to establish that the Vitamin B-12 concentrate was in fact stolen. Neither argument has merit.

■ The record fully supports the proposition that the five drums picked up by Steinschreiber were the same five delivered later by Zarrett to Weinstein and produced on trial. DeKunchak was clearly interested in selling B-12, Steinschreiber picked up the five drums from DeKunchak and he and Zarrett were observed by a Customs Agent removing the drums at Valley Stream and placing them in Zarrett's car. Later that day Zarrett transferred the drums to Weinstein, who paid the agreed price. Steinschreiber then returned to New Jersey to pay DeKunchak.

■ Steinschreiber testified that the drums he received from DeKunchak and Deo were "banged up," but the drums sold to Weinstein were evidently undamaged. It is not altogether certain from this testimony, however, that the damaged drums were the ones containing the B-12. DeKunchak and Deo had also given Steinschreiber drums containing Vitamin B-2 or D-2 crystals. Moreover, there would be no reason at all for Stein-

schreiber's pay-off to DeKunchak, if he had not sold DeKunchak's B-12. The resolution of this question, together with the evaluation of Steinschreiber's and the Customs Agents' testimony on this point, was clearly a question for the jury. United States v. Taylor, 464 F.2d 240, 243–245 (2d Cir. 1972).

■ Appellant concedes that the Government need not establish the stolen character of the goods by direct evidence. United States v. Marcus, 429 F. 2d 654, 656 (3d Cir. 1970). There was ample evidence here from which the jury could infer theft. The five drums of B-12 in the possession of DeKunchak and Deo bore the same labels as those missing from the Spector Warehouse. The compound was chemically identical to that which disappeared. They were sold for less than half of their value by people who were dealing with a person admittedly trafficking in stolen chemicals and who had previously dealt in the stolen ephedrine. Moreover, no explanation at all was proffered which would suggest that appellant's possession of the pharmaceutical was innocent. The surreptitious and furtive transfers provided ample evidence to support the inference that DeKunchak was fully aware that he was dealing in stolen chemicals. United States v. Edwards, 366 F.2d 853, 867 (2d Cir. 1966), cert. denied, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967). The chain of evidence here is convincing and the refusal of the trial court to direct an acquittal was clearly sound. See United States v. Taylor, *supra.*

■ Appellant argues that there was insufficient proof to establish that the appellant knew or should have foreseen that the goods were to be transported out of state. The record establishes that DeKunchak was well aware that Steinschreiber was based in New York. He had telephoned him in New York and he helped load his car, carrying New York plates, with the B-12 on the day that the ultimate transfer to Weinstein was made in Manhattan. In addition, Steinschreiber testified that it was understood that he would take the merchan-

dise to New York. Steinschreiber was acting as an agent of DeKunchak and in our view these facts and the circumstances already set forth in the opinion, fully justify the inference that the appellant either knew or certainly should have foreseen that the goods would cross state lines. It is true that the trial court did not charge the jury that this "interstate shipping intent" was a necessary ingredient of the crime. However, the authority relied upon for the proposition that such intent is required, United States v. Scandifia, 390 F.2d 244 (2d Cir. 1968) is also authority for the proposition that where no objection is made to the failure to so charge there is no plain error where the evidence demonstrates the defendant intended, knew or reasonably could have foreseen the interstate transportation. Fed.R.Crim.Proc. 30. Appellant here did not specifically request such a charge and in fact counsel has candidly admitted on appeal that he was unaware of the *Scandifia* decision. The circumstances here are much more persuasive than those in *Scandifia* where this court affirmed a judgment of conviction under 18 U.S.C. § 2314 even though the trial court not only failed to charge this intent as an element of the crime but, on the contrary, charged that no such "interstate shipping intent" was required under the statute. Moreover, in *Scandifia,* the transportation across state lines was by a duped agent while the facts in this case establish that the carriers, Steinschreiber and Zarrett, were acting in close cooperation with DeKunchak.

■■ Appellant further claims that the trial court was in error in refusing his charge that the state had to prove a specific intention to commit a specified crime beyond a reasonable doubt before the defendant could be convicted. There was no error here. The requested charge did not define any specific intent and appellant's brief does not indicate what specific intention this crime supposedly requires. It would seem that only a general criminal intent is necessary to violate 18 U.S.C. § 2314.

One who knowingly transports stolen goods would do so for one of three sorts of objects, namely: (1) to dispose of them or use them unlawfully; (2) to aid in concealing the theft, thus avoiding prosecution for himself or another; or (3) for some purpose wholly innocent, such as to turn them over to the police or the rightful owner.

In the first two instances there would be inherent in the act "unlawful intent" or "fraudulent intent," though proof of this might not be required apart from the proof of knowledge and absence of any showing of innocent purpose. Congress obviously did not intend to make criminal such an instance as the third. However, proof of the innocent intent might be required as matter of defense, the other elements being made out. In other words, it may well be doubted that adding the requirement "With unlawful or fraudulent intent" in the amended part of the section added anything to the substantive crime; for its effect is apparently only to require the state to allege and prove the unlawful or fraudulent intent, rather than to require the defendant to allege and prove his innocent purpose. United States v. Sheridan, 329 U.S. 379, 385 n. 11, 67 S.Ct. 332, 335 n. 11, 91 L.Ed. 359 (1946).

The trial court, moreover, properly charged on the only general intent necessary to constitute a violation of section 2315, i. e., the defendants had to have known that they were dealing with stolen merchandise.

■ On this appeal appellant has relied principally upon the argument that venue was not properly laid as to Count III in the Eastern District of New York (Long Island) since the material was originally transferred to Steinschreiber in New Jersey and ultimately sold by Zarrett to Weinstein in the Southern District of New York (Manhattan). It is urged that the appellant's receiving, selling and disposing under Count III of the indictment took place either in New Jersey or the Southern District of New York and the fact that the goods passed through the Eastern District, where they were transferred from Steinschreiber to Zarrett, does not suffice to predicate jurisdiction in the Eastern District of New York.

The ready answer to this contention is that 18 U.S.C. § 3237(a) in its second paragraph provides:

Any offense involving the use of the mails, or transportation in interstate or foreign commerce, *is a continuing offense* and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves. (Emphasis added).

That the transaction in question involved transportation in interstate commerce cannot be questioned. Steinschreiber was acting as an agent for the appellant in making the sale. The goods were clearly transported from New Jersey to New York with an intermediate stop in Long Island for transfer to another vehicle and another agent for ultimate disposal in Manhattan.

■ The further question is whether a violation of 18 U.S.C. § 2315, which *inter alia* prohibits receiving, selling and disposing of stolen goods, is within the venue provisions of section 3237(a). The statutory history of both sections supports the proposition that the intent of Congress was to include a section 2315 offense within this general venue section. Section 2315 had its genesis in the National Motor Vehicle Theft Act enacted in 1919. This statute was extended to other stolen property by the National Stolen Property Act of 1934. (Act of May 22, 1934, ch. 333, 48 Stat. 794.) In 1940 the Stolen Property Act was codified in the United States Code becoming 18 U.S.C. §§ 413–419. Section 416 thereof was the basis for present section 2315. (See Reviser's note to the present section). Section 418 was the Special Venue section and it provided: "Any person violating [sections 413–419

of this title] may be tried in any district from, into, or through which such goods, wares, or merchandise . . . have been transported or removed." It would seem clear therefore that had the appellant here been tried under the 1940 statute, venue as to Count III would lie in the Eastern District, through which the goods were transported. However, in the 1948 recodification, section 416 became the present section 2315 and section 418, the special venue section, was eliminated from the Stolen Property Act (just as the special venue provision of the Stolen Vehicle Act was dropped). The intent of Congress was not to eliminate entirely the special venue "transportation through" sections but rather to make the second paragraph of the new section 3237(a) applicable. The Reviser's notes to the present sections 2312, 2314 and 2315 make it abundantly clear that old section 418 was omitted as "completely covered by section 3237 of this title."

The reason for the passage of the omnibus special venue statute is clearly set forth in the Reviser's note to section 3237:

> The last paragraph of the revised section was added to meet the situation created by the decision of the Supreme Court of the United States in United States v. Johnson, 1944, [323 U.S. 273,] 65 S.Ct. 249, 89 L.Ed. 236, which turned on the absence of a special venue provision in the Dentures Act, section 1821 of this revision. The revised section removes all doubt as to the venue of continuing offenses and makes unnecessary special venue provisions except in cases where Congress desires to restrict the prosecution of offenses to particular districts as in section 1073 of this revision.

It thus becomes apparent that no change in the law was contemplated and that the transportation of the goods through the Eastern District gave jurisdiction to that court to try DeKunchak on Count III of the indictment.

Appellant argues that selling or disposing of property is a one step crime which here was committed either in New Jersey or the Southern District of New York but not in the Eastern District and hence venue cannot lie there. Reliance is placed on United States v. Bozza, 365 F.2d 206 (2d Cir. 1966) in which this court reversed a conviction of receiving stolen goods where the theft occurred in New Jersey, the receipt of the goods occurred in the Southern District and the defendant was tried in the Eastern District. A reading of Judge Friendly's opinion, however, discloses that the second paragraph of section 3237(a) which is at issue here, was not involved in that case. There the defendant DeLutro had not transported any goods through the Eastern District but had by chance made a phone call from Brooklyn, agreeing to purchase stolen stamps in Manhattan. The issue was whether under the first paragraph of section 3237(a) [2] the crime of receiving stolen property could be said to have "begun" by the making of the call. We held there that receiving was a "one step" crime and not a continuous offense. Here, of course, the second paragraph of section 3237(a) (not applicable in *Bozza*) defines the selling and disposal of the goods initiated by DeKunchak in New Jersey as a continuing asportation of the property through Long Island to New York. "[I]f the Congress is found to have created a continuing offense, 'the locality of [the] crime shall extend over the whole area through which force propelled by an offender operates.' United States v. Johnson, *supra*, 323 U.S. 273, at page 250, 275, 65 S.Ct. [249,] 250 [89 L.Ed. 236]." United States v. Cores, 356 U.S. 405, 408, 78 S.Ct. 875, 878, 2 L.Ed.2d 873 (1958). Whether DeKunchak is now considered to have been a principal or an accessory in the continuing offense charged

---

2. "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

in Count III of the indictment, he was properly tried in the Eastern District. 18 U.S.C. § 2; United States v. Bozza, *supra,* 365 F.2d at 221; United States v. Gillette, 189 F.2d 449, 451–52 (2d Cir.), cert. denied, 342 U.S. 827, 72 S. Ct. 49, 96 L.Ed. 625 (1951); United States v. Sweig, 316 F.Supp. 1148, 1160–1161 (S.D.N.Y.1970).

There is no claim here that DeKunchak has been deprived of any Sixth Amendment right to a fair trial. There is no suggestion of inconvenience to witnesses or prejudice to the appellant. The New Jersey to Long Island to Manhattan asportation did not involve a trek through remote and foreign climes but was within the vicinage. In fact, on a summer afternoon one could pick up stolen goods in Newark, drive to Valley Stream, Long Island and then on to New York City for the sale and drive back to Newark the same day to make the payoff.

We have considered all of the appellant's arguments on appeal and find them to be without merit.

Affirmed.