**UNITED STATES of America,
Appellee,**

v.

**Henry JENKINS, Appellant.**

**No. 521, Docket 74–2257.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1975.

Decided Feb. 10, 1975.

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society,

Federal Defender Services Unit, New York City), for appellant.

V. Thomas Fryman, Jr., Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. New York, John D. Gordan, III, Asst. U. S. Atty., of counsel), for appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Henry Jenkins seeks to upset his conviction for possession of stolen mail in the district court for the Southern District of New York. The indictment charged the defendant with 16 violations of 18 U.S.C. § 1708,[1] one count for each of 16 checks mailed by the New York City Department of Social Services and then allegedly illegally possessed by the defendant. After one mistrial, a second jury returned a verdict of guilty on six counts.[2] The court, Judge Lee P. Gagliardi, entered judgment on the verdict on September 11, 1974, and sentenced the defendant to concurrent six-month prison terms with a three-year probation period to follow. On appeal, Jenkins contends that Judge Gagliardi committed reversible error in three respects: the court failed to submit the issue of venue to the jury; it prohibited the jury from inferring that the negative of an incredible witness' testimony represented the truth; and it restricted the defense's cross-examination of a key government witness. Since we conclude that none of these grounds for reversal is meritorious, we affirm the judgment below.

At trial the prosecution relied heavily on a statement signed by Jenkins after its dictation by a postal inspector to whom (with another inspector present) Jenkins confessed his participation in a check-stealing and -cashing arrangement. According to the statement, the appellant received Social Services checks from a post office employee, brought the checks to one Vincent Cartiglia to be cashed, and then returned to the postal employee with roughly half the cash value of the checks (from which Jenkins would at that time be given his commission). The government supported the statement's reliability with testimony by the two postal inspectors regarding the circumstances of its rendition. Although the defense sought to undermine the prosecution's case by vigorous cross-examination, it produced no witnesses of its own to rebut the charges.

## I. VENUE

The appellant contends that his conviction is defective because it is unsupported by a jury finding that the offense charged in fact transpired in the Southern District of New York, the judicial district in which the trial was held. At trial the defense asked the court to instruct the jury that to convict it must find beyond a reasonable doubt that venue is proper in the Southern District of New York. Quite correctly, United States v. Catalano, 491 F.2d 268, 276 (2d Cir.), cert. denied, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974), the court

1.  § 1708. Theft or receipt of stolen mail matter generally

    Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

    Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal

card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2.  At the first trial, two of the 16 counts were dropped on the prosecution's motion.

refused to incorporate this burden of proof standard in its charge. Neither did the court instruct the jury, however, that the government must show proper venue by a preponderance of the evidence. Rather, the court's only reference to the venue issue in the charge was made in passing when it read the indictment to the jurors:

"On or about the 16th day of April, 1973, in the Southern District of New York"—and for our purposes the Southern District of New York encompasses Manhattan and Bronx Counties —"Henry Jenkins, the defendant, did unlawfully, wilfully and knowingly have in his possession the contents of certain letters. . . ."[3]

■ The parties strenuously debate in their briefs whether venue is an issue for the jury or, instead, for the court. Since resolution of this question of considerable significance to the administration of justice is unnecessary to the disposition of the venue claim before us, we do not now pass upon it.[4] This question's purely academic interest in this context derives from two sources. First, although the court might have charged the point more clearly, it almost certainly did, in the above-quoted portion of its charge, submit the venue issue to the jury. The defendant has already received, then, the benefit of the doubt on this question. Our finding as to the adequacy of the charge on venue, it should be noted, is buttressed by the defendant's failure to request a proper charge on venue after the court's denial of his unfounded request for a "beyond a reasonable doubt" instruction on the issue. By neglecting to specify that the jury

cannot return a guilty verdict unless it finds by a preponderance of the evidence that venue is proper, moreover, the court could only have helped the defendant: The court's silence on burden of proof left the jury free to make the perhaps natural assumption that the government had to prove venue with the same cogency as, the jury was instructed, it must prove the other elements of the offense—i. e., by beyond a reasonable doubt. Nor can the defendant complain of the court's equation of the Southern District with Manhattan and Bronx Counties, for the underinclusiveness of the geographic description could only have redounded to his favor.

■ Secondly, whether or not the court actually submitted the venue issue to the jury would not be decisive under the circumstances in any event. For the overwhelming evidence presented at trial of the commission of the crime in the Southern District would render harmless any error which may inhere in failing to submit the issue of venue to the jury. Circumstantial evidence of venue abounded: Jenkins owned a Manhattan luncheonette; Cartiglia's meat market was also in Manhattan; Jenkins repeatedly mentioned Cartiglia and his Manhattan market in tandem; within two hours of Jenkins' delivery of the checks to Cartiglia, the latter would return to Jenkins with the proceeds;[5] and all the payees of the checks resided in the Bronx.

The court's charge to the jury on venue, therefore, was almost certainly adequate. To the extent that the court may be felt to have erred in this regard, the strong evidence on the record of proper

---

**3.** Transcript at 212.

**4.** The government contends that United States v. Gillette, 189 F.2d 449 (2d Cir.), cert. denied, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951), which indisputably holds that venue is a jury issue, was probably wrong when decided and, in any event, is no longer recognized as sound authority. Without rejecting the government's position, we do note that: *Gillette* was decided by a unanimous and distinguished panel of this court (L. Hand, Ch. J., Swan, Frank, JJ.); subsequent cases in this

circuit appear to recognize tacitly that venue is a jury issue, United States v. Catalano, *supra,* 491 F.2d 268 at 276; United States v. Provoo, 215 F.2d 531, 537 (2d Cir. 1954); and at least one other circuit has since joined the *Gillette* court in requiring submission of the venue issue to the jury, Green v. United States, 309 F.2d 852 (5th Cir. 1962).

**5.** From this information one might infer that the transaction transpired locally, the checks probably being delivered and cashed in Manhattan during business hours.

venue requires treating any such error as harmless.

## II. INFERENCES FROM FALSE TESTIMONY

■ The appellant also faults the court's instruction insofar as it precluded the jurors from taking as true the negative of an incredible witness' assertions and denials. In relevant part, the court charged:

Should you find that all or any part of a particular witness' testimony was false, you may not of course infer that the opposite of that testimony is the truth unless there is other evidence to that effect. Any testimony rejected by you as false is no longer in the case insofar as any finding that you may make is concerned.

You will recall that I told you that an inference is a conclusion which reason or common sense leads you to draw from the facts which you find have been proved. Thus a finding of fact may not be established merely by a negative inference arising from your disbelief and rejection of any testimony.[6]

According to Jenkins, this instruction wrongfully abetted his conviction by immunizing the two postal inspectors' testimony from negative inference: The jury should have been free, the appellant contends, not only to disbelieve the inspectors' testimony regarding the circumstances of the confession but also to believe the very opposite of their sworn statements.

Authority for permitting juries to draw negative inferences from disbelieved testimony indeed lies, as the appellant asserts, in Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952):

[T]he denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is

no alternative but to assume the truth of what he denies.

Judge Learned Hand goes on in his *Dyer* opinion, however, to qualify this allowance for jury inference:

Nevertheless, although it is therefore true that in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him.

*Id.* In effect, therefore, by proscribing a negative inference "unless there is other evidence to that effect," the district court has simply stated the *Dyer* rule in the converse. Perhaps *Dyer's* teaching, that a jury may infer the negative of disbelieved testimony except where that inferred lacks independent support in the evidence,[7] may be limited to instances in which the party urging the inference bears the burden of proof. This case does not require us to decide that question, however, for the court's compliance with *Dyer* is of no actual moment here: Given the government's burden of proving guilt beyond a reasonable doubt, it is highly dubious that a jury which found guilt could simultaneously have disbelieved the government witnesses upon whose word the prosecutorial value of the defendant's confession would rise or fall. Any deviation from *Dyer*, therefore, would almost certainly be unimportant under the circumstances of this case.

■ Finally, since the defendant failed to object in the district court to this portion of the charge, we would recognize the alleged defect in the charge only if it constituted plain error. Fed.R. Crim.P. 52(b); United States v. Clark, 475 F.2d 240, 250–51 (2d Cir. 1973). And to the extent that the court may have erred in this respect, its error was clearly not of the gravity needed to trigger

---

6. Transcript at 220.

7. Since the defendant failed to offer any evidence in his own defense, such independent support for a negative inference would almost necessarily have been lacking.

the operation of the plain error exception.

The appellant has no cause for complaint in the trial court's instruction to the jury on inferences which may permissibly be drawn from the testimony of a disbelieved witness. Any possible deficiencies in the charge in this respect are shielded from successful attack by the harmless and plain error doctrines.

### III. SCOPE OF CROSS-EXAMINATION

The appellant's third ground for reversal focuses on a ruling by the court circumscribing the defense's cross-examination of one of the postal inspectors. The trial court curtailed inquiries into the inspector's failure to record the confession electronically or employ any other method of memorializing the confession than that actually used. (The inspector dictated a statement ostensibly summarizing the confession, which statement the defendant then signed.) These inquiries were apparently designed to undermine simultaneously the inspector's credibility and the confession's inculpatory force.

 An appellate court must review rulings of this sort with great deference: An abuse of discretion must be found for a ruling on the extent of cross-examination to warrant reversal. Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In the instant case, the trial court may be charged with no such abuse, for its ruling represented a reasonable resolution of the competing needs to avoid detours in the trial and to allow the defendant a fair opportunity to present his defense. *Cf.*, United States v. Dorfman, 470 F.2d 246, 248 (2d Cir. 1972), cert. denied, 411 U.S. 923, 93 S.Ct. 1561, 36 L.Ed.2d 317 (1973). More specifically, as the questioning shifted the trial's focus to the presence of recording equipment in the building where the confession was rendered, the district court could quite properly have concluded that the inquiry stood to distract the jurors and consume the court's time more than its possible value to the defense warranted—a value probably already realized in full since the defense had effectively raised the possibility that the inspectors might have memorialized the confession in a manner less open to suspicion than that employed.

The trial court acted well within its discretion in limiting the scope of the defendant's cross-examination of a government witness. The trial below was free from reversible error in the court's instructions to the jury on venue and permissible inferences from disbelieved testimony. We therefore affirm the conviction.

Affirmed.