**UNITED STATES of America**

v.

**Michael HART–WILLIAMS, Defendant.**

**No. 95–CR–1195(ERK).**

United States District Court,
E.D. New York.

June 5, 1997.

---

David H. Hennessey, Assistant U.S. Attorney, Office of the U.S. Attorney of the Eastern District of New York Criminal Division, Brooklyn, NY, for Plaintiff.

Robert S. Wolf, New York City, for Defendant.

*MEMORANDUM*

KORMAN, District Judge.

The defendant, Michael Hart–Williams, is a Nigerian citizen who was charged with and convicted of conspiracy to import heroin for eventual distribution in the New York City metropolitan area. The principal witness, Victor Moni–Erigbali, was a cooperating co-conspirator who testified that after he received a package containing heroin, he was advised by another co-conspirator who resided in England, Greg Unanseru, that defendant would soon contact him regarding delivery of the package. Shortly thereafter the defendant arrived at Kennedy Airport, checked into the Best Western Midway Hotel in Queens, and called Moni–Erigbali's beeper. Moni–Erigbali then called the defendant at the Best Western. During this call they made no formal arrangements to meet, although they agreed that Moni–Erigbali would call again soon with such details.

Later that day, in another telephone call to the defendant at the Best Western, Moni–Erigbali suggested a meeting at Pennsylvania Station in Newark, New Jersey. After the meeting, Moni–Erigbali drove defendant to a storage facility in Hillside, New Jersey, retrieved the heroin, and gave it to the defendant. Moni–Erigbali and the defendant then discussed payment and parted, agreeing to settle their accounts later.

A few days hence, Moni–Erigbali received a second package of heroin. Because he feared apprehension by the authorities, Moni–Erigbali contacted a federal Drug Enforcement Agency ("DEA" hereinafter) agent instead of contacting Unanseru for delivery instructions. Moni–Erigbali agreed to cooperate with the DEA and turned over to them the second package of heroin. DEA agents then recorded Moni–Erigbali's phone calls with Unanseru and the defendant concerning arrangements for delivery of the second package to defendant. The defendant, now staying at the Milford Plaza Hotel in Manhattan (which is located in the Southern District of New York), agreed to meet Moni–Erigbali at a diner in Manhattan. Moni–Erigbali wore a wire to this meeting and

discussed with defendant the speed with which he had been able to sell the prior shipment of heroin. The two left the diner without exchanging the heroin, at which point DEA agents intervened and arrested the defendant.

The defendant was tried and convicted on one count of conspiring and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1994). Prior to trial he moved for dismissal of the indictment, claiming that venue was improper in the Eastern District of New York. I denied this motion, although I offered to transfer the case to the Southern District pursuant to Fed.R.Crim.P. 21. *See* April 2, 1996, Suppression Hr'g Tr. at 61:7–12. The defendant did not respond to my offer, and the case proceeded to trial.

▮ At trial, the defendant again argued that the United States Attorney had failed to establish venue in the Eastern District, contending that the only significant acts in furtherance of the conspiracy transpired in the Southern District and the District of New Jersey. Defendant's argument was again without merit, because the defendant arrived through Kennedy Airport and received calls at a Queens Hotel during which he and his co-conspirator plotted the delivery of the heroin—both of which were plainly acts in furtherance of the conspiracy charged, and each of which was sufficient to establish venue in the Eastern District. *See United States v. Chalarca*, 95 F.3d 239, 245 (2d Cir.1996) ("[I]t was necessary for the government to establish only that the crime [of conspiracy], or some part of it, occurred in the [concerned] District in order to have venue there.").

At the trial's close, the defendant requested that the jury be instructed that, if it found venue was not proven by a preponderance of the evidence, it must return a verdict of not guilty. I declined to give this instruction, both because acquittal is not required when venue is improperly laid, and because there was no rational reason to submit the issue to the jury. This memorandum sets forth more fully my reasons for that decision.

## DISCUSSION

The defendant's request to charge raises two issues. The first is whether a defendant is entitled to a judgment of acquittal if venue is not proven, and the second is whether a jury must decide the issue. The answer to both questions depends on whether venue is an essential element of a crime.

### 1. Acquittal on Venue Grounds

▮ An instruction that a jury must acquit if there is a failure of proof on the issue of venue, 1 L. SAND, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS ¶ 3.01, at 3–25 (1996), can be justified only on the assumption that venue is an essential element of the offense. While some precedent supports this assumption—*see, e.g., United States v. Massa*, 686 F.2d 526, 527 (7th Cir.1982)—"venue has not been treated as other essential elements", SAND, *supra*, at 3–26, either in the Second Circuit or elsewhere, *id.* at 3–26 to 3–27. On the contrary, the Second Circuit has now joined the Fourth and Ninth Circuits in flatly rejecting the proposition that venue is an essential element of an offense. *See United States v. Maldonado–Rivera*, 922 F.2d 934, 969 (2d Cir.1990) (Kearse, J.), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991), *and* 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991); *United States v. Kaytso*, 868 F.2d 1020, 1021 (9th Cir.1988); *United States v. Griley*, 814 F.2d 967, 973 (4th Cir.1987).

In *Maldonado–Rivera*, which held that "[v]enue is not an element of the offense[,]" *id.* at 969, Judge Kearse observed that venue provisions relate only to the issue "of the prosecution's permissible location." *Id.* "Since venue is not an element of the offense, the government may prove venue by a preponderance of the evidence and need not prove it beyond a reasonable doubt." *United States v. Rosa*, 17 F.3d 1531, 1541 (2d Cir.), *cert. denied*, 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994).

As venue is not an element of a criminal offense, there is no legal basis for the request for an instruction to acquit if the jury finds that venue was not proven. An acquit-

tal " 'represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged[.]' " *United States v. Scott*, 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) (alteration in original) (quoting *United States v. Martin Linen Supply*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977)). Quite obviously, the "failure to establish venue does not go to guilt or innocence." *Kaytso*, 868 F.2d at 1021.

*Scott* affords additional support for refusing defendant's request for an acquittal instruction. It holds that a mid-trial dismissal resulting from pre-indictment delay is not an acquittal, even if a judge relies on evidence presented at trial to conclude that the delay prejudiced defendant, because "the dismissal of an indictment for pre-indictment delay represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation." *Scott*, 437 U.S. at 98, 98 S.Ct. at 2197. Like the dismissal at issue in *Scott*, a venue dismissal represents a judgment that, although a defendant may be "criminally culpable," the case against him must be dismissed because competing policies, embodied in the Constitution and Fed. R.Crim.P. 18, dictate that the case be brought elsewhere. Indeed, for this reason it has been repeatedly held that a dismissal for lack of venue after jeopardy has attached does not bar re-prosecution of that offense. *See. e.g., Kaytso*, 868 F.2d at 1021; *United States v. Brunty*, 701 F.2d 1375, 1380 n. 12 (11th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983).

Accordingly, even if the issue of venue was properly one for the jury, the defendant would be entitled only to an instruction that, if the jury finds that venue was not proven, then it should return a special verdict to that effect. A verdict of acquittal is neither required nor appropriate if the jury finds that all of the elements of the offense have been proven beyond a reasonable doubt.

## 2. *Submission of Venue to the Jury*

■ "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). *Maldonado–Rivera*'s holding, that venue is not an element of the offense, and that it raises only the issue "of the prosecution's permissible location," 922 F.2d at 969, thus compels the conclusion that venue is not an issue for the jury. Particularly apposite here are Second Circuit cases holding that it is for the judge to resolve factual disputes relating to the quantity of drugs in narcotics trafficking prosecutions under 21 U.S.C. §§ 841(a) and 844 (1996), because these disputes does not go to an element of the offense, but only to the issue of whether the defendant's sentence should be enhanced. *See United States v. Monk*, 15 F.3d 25, 27 (2d Cir.1994) (summarizing *United States v. Jacobo*, 934 F.2d 411, 416 (2d Cir.1991), which holds that "even if the jury in a § 841 case made a determination of the quantity of drugs involved, the sentencing judge would not be bound thereby and would have to make an independent determination of the quantity"); *United States v. Campuzano*, 905 F.2d 677, 679 & 680 n. 4 (2d Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). These cases demonstrate that, even if a factual issue is inextricably intertwined with determining guilt or innocence and may be readily assessed by the jury, a defendant is not entitled to have the issue submitted to the jury unless it is an element of the crime charged.

Because venue is neither an element of the crime charged, "no[r] an integral part of a criminal offense," *Holdridge v. United States*, 282 F.2d 302, 305 (8th Cir.1960), it is simply absurd to suggest that the issue must be submitted to the jury. On the contrary, because venue need not be established beyond a reasonable doubt, submitting the issue to the jury creates "confusion by interjecting a lower standard of preponderance of the evidence." SAND, *supra*, at 3–27. While it has been suggested that such confusion should be avoided by instructing the jury that venue must be found beyond a reasonable doubt, *id.*, such an instruction only compounds the error of submitting the venue issue to the jury in the first place. The

jurors' confusion can be eliminated by simply withholding from them an issue that should properly be resolved by the trial judge.

This conclusion is also consistent with Jury Trial Clause cases that hold that a jury need not decide factual issues relating to a criminal defendant's procedural rights. Indeed, in *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (White, J.), the Supreme Court expressly rejected the claim that the Jury Trial Clause guaranteed a defendant the right to a jury trial respecting the admissibility of evidence:

> *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which made the Sixth Amendment right to trial by jury applicable to the States, did not purport to change the normal rule that the admissibility of evidence is a question for the court rather than the jury. Nor did that decision require that both judge and jury pass upon the admissibility of evidence when constitutional grounds are asserted for excluding it.

*Id.* at 490, 92 S.Ct. at 627.

The issue of whether an offense had sufficient contact with a particular district to justify trying the defendant in that district stands on the same footing. Taking the venue issue from the jury does not in any way undermine the Framers' "insistence upon community participation in the determination of guilt or innocence." *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). Nor does characterizing venue as a "nonsubstantive element[,]" the oxymoron recently used by the Tenth Circuit in *United States v. Miller*, 111 F.3d 747, 749 n. 3 (10th Cir.1997),[1] change the fact that it is the merits of the case that animate the concerns underlying the Jury Trial Clause, "and venue in this regard is wholly neutral, a matter of procedure." *Kaytso*, 868 F.2d at 1021.

In holding that venue is not a matter for the jury, I decline to follow *United States v. Gillette*, 189 F.2d 449, 452 (2d Cir.), *cert. denied*, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951), and other Second Circuit cases that suggest that a venue defense should be submitted to the jury—at least "when the [venue] question is 'squarely interposed' by the defense." *United States v. Sutton*, 13 F.3d 595, 598 (2d Cir.1994) (citing for support *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980)). These cases rest on the now discredited premise that venue is an element of the offense which the jury must decide.

Specifically, in *Gillette*, the Second Circuit held that it was error, albeit harmless, not to instruct the jury on venue, "for under the Sixth Amendment[,] proof of venue is an indispensable part of the prosecution's case." 189 F.2d at 452. While the *Gillette* Court did not explain why the jury, rather than the judge, must always determine whether the prosecution had met its burden of proof on the venue issue, the manner in which the Court applied the harmless error test suggests that it believed venue is an element of the offense, and thus an issue that must go to the jury. More particularly, in response to the defendant's argument on rehearing, that the failure to instruct the jury on the issue of venue could not be harmless because it deprived him of his right to have the jury make the factual finding, the Court of Appeals observed that the verdict of guilty must have been based on the jury's finding that the defendant had committed an act in the district sufficient to establish venue. *Id.* at 454. On this basis, it distinguished the Supreme Court case on which the defendant there relied, which had held that a defendant is entitled to a fair and accurate charge on the elements of the offense, and that the absence of a proper instruction could not lightly be dismissed as harmless. *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

Some twenty-four years after it was decided, however, the Second Circuit declined to address a direct challenge to *Gillette*. Specifically, in *United States v. Jenkins*, 510 F.2d 495 (2d Cir.1975), the United States Attorney argued that *Gillette* "was probably wrong when decided and, in any event, is no longer recognized as sound authority." *Id.*

---

1. In *Miller*, the Tenth Circuit, in a two-to-one decision, held that venue, "a nonsubstantive element", is ordinarily a question for the jury. *Miller*, 111 F.3d at 749 & n. 3.

at 498 n. 4. The *Jenkins* Court avoided this argument "without rejecting the government's position", because it found (as was true in *Gillette*) that the error was harmless.[2] *Id.* Since *Jenkins*, the Second Circuit has not had occasion to address the continuing viability of *Gillette's* premise, both because it has apparently not been asked to do so, and because the doctrines of waiver and harmless error have enabled it to avoid the issue. *See. e.g., Sutton,* 13 F.3d at 598 (summarizing waiver cases). Indeed, while convictions have been reversed because venue was improper—*see United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1191 (2d Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); *United States v. Rodriguez,* 465 F.2d 5, 11 (2d Cir.1972); *United States v. Zeuli,* 137 F.2d 845, 847 (2d Cir.1943)—my research has not uncovered a single case in which the Second Circuit has reversed a conviction simply because the presiding judge failed to submit the venue issue to the jury, or because a deficient instruction was given in a case in which a jury could have found that venue was properly laid. Concededly, there have been cases that reverse convictions because a jury was instructed in a manner that permitted venue to be found where it could not properly lie as a matter of law. While technically speaking, the charge in such cases was erroneous, the more fundamental defect, and the one which prompted reversals of the convictions, was the decision to even submit the venue issue to the jury. *See, e.g., Rodriguez,* 465 F.2d at 10–11.

On the other hand, the Second Circuit has held that, if there is "substantial evidence" that venue is proper in the Eastern District of New York, it is "within the bounds of [the judge's] discretion" to decline to give a venue charge to the jury. *Grammatikos,* 633 F.2d at 1023. Such a holding is flatly inconsistent with the premise of *Gillette* and *Jenkins*— that it is reversible *error* not to submit the venue issue to the jury. More significantly, as discussed above, Second Circuit decisions of more recent vintage hold that where a factual issue does not go to an element of the criminal offense, it is for the judge, and not

the jury, to resolve. *See, e.g., United States v. Monk,* 15 F.3d 25, 27 (2d Cir.1994). Thus, in this very case it was for me to determine the quantity of drugs the defendant conspired to possess, because that factual issue did not go to an element of the crime charged. There is simply no rational basis for keeping from the jury the drug quantity issue, which directly affects defendant's sentence, while insisting that the issue of the "prosecution's permissible location", *Maldonado–Rivera,* 922 F.2d at 969, an issue of far less consequence, go to the jury.

Accordingly, although it has not yet been expressly abandoned, *Gillette* can no longer be deemed controlling on the issue of whether it is for the jury to decide whether venue is proper. Only *Gillette's* narrower holding—that a conviction may be affirmed notwithstanding a judge's failure to submit the venue issue to the jury—endures, and my decision not to charge the jury on venue here is consistent with that holding. *Cf. United States v. Gaudin,* 515 U.S. 506, ——, 115 S.Ct. 2310, 2319, 132 L.Ed.2d 444 (1995) ("[S]tare decisis cannot possibly be controlling when ... the decision in question has been proved manifestly erroneous, and its underpinnings eroded, by subsequent decisions[.]")

### 3. Harmless Error Analysis

■ I turn now to the final issue raised by defendant's request: Was the defendant, a transient foreign national who was tried within the limits of the City of New York, the *locus delicti,* deprived of a substantial right because he was tried on the wrong side of the Brooklyn Bridge? *See* Fed.R.Crim.P. 52(a) ("Any error [or] defect ... which does not affect substantial rights shall be disregarded.").

The Venue Clause, Article III, § 2, ¶ 3, which mandates a trial "in the State where the said Crimes shall have been committed", is not implicated here because the defendant was tried in New York State, where venue was concededly proper. While the Vicinage Clause of the Sixth Amendment, which man-

---

**2.** The *Jenkins* Court did imply, for reasons that do not go to *Gillette's* merits, that the latter's

demise was not a foregone conclusion. *See Jenkins,* 510 F.2d at 498 n. 4.

dates a trial "by an impartial jury of the State and district wherein the crime shall have been committed," may be implicated here, it is a relic of a bygone era when jurors decided cases on the basis of personal knowledge (William W. Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue*, 43 Mich. L.Rev. 59, 60–61 (1944)), and its purpose is merely to "underscore the importance of th[e] safeguard" provided by the Venue Clause. *United States v. Johnson*, 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944). As Professor Blume has written,

> [t]he Sixth Amendment preserves one of the oldest institutions of the common law—the jury of the vicinage. Venue in modern law means the place of trial. Vicinage means, not the place of trial, but the place from which the jury must be summoned. Through centuries of development the pattern of progress has been from vicinage to venue.

Blume, *supra*, at 60. *Cf.* Drew L. Kershen, *Vicinage* (pts. 1 & 2), 29 Okla. L. Rev. 803 (1976), 30 Okla. L. Rev. 3, 75 (1977)(describing and lamenting "the disappearance of the concept of vicinage as a meaningful, independent concept.").

The Venue and Vicinage Clauses, which are codified in Fed.R.Crim.P. 18, were adopted against the backdrop of the English law and practice of forcing colonists to be transported "beyond Seas to be tried for pretended offenses", The Declaration of Independence, and it thus seems clear that "[t]he Framers' mandate for trial in the vicinity of the crime was meant to be a safeguard against the injustice and hardship involved when the accused was prosecuted in a place remote from his home and acquaintances." *United States v. Busic*, 549 F.2d 252, 258 (2d Cir.1977); *accord United States v. Cores*, 356 U.S. 405, 407 & 410, 78 S.Ct. 875, 877 & 879, 2 L.Ed.2d 873 (1958); *Johnson*, 323 U.S. at 275–76, 65 S.Ct. at 250–51.

Of course, at the time the Constitution was adopted, "most crimes were committed at the place where the defendant resided[,]" and "[t]he Framers could hardly have anticipated the increased mobility of the population, and the expansion of notions of vicarious partic-

ipation in crime, that often make it possible to fix venue, in conformance with the Constitution, at a place far distant from the defendant's jurisdiction." 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 301, at 191–92 (2d ed.1982); *accord United States v. Reed*, 773 F.2d 477, 480–81 (2d Cir.1985). Nonetheless, "the historic experience and policy which underlie those safeguards in the Constitution regarding the trial of crimes[,]" *Johnson*, 323 U.S. at 275, 65 S.Ct. at 250, must inform any decision as to whether a defect in venue impinges upon substantial rights of the defendant.

The present configuration of federal judicial districts in the southern part of New York State is an historical anomaly. Until 1865, Brooklyn and the rest of Long Island (on which Brooklyn is located) were part of the Southern District of New York. At the time the Eastern District was created, Brooklyn was a separate city with no physical links to New York City—a municipality then consisting only of Manhattan Island. Under these circumstances, division of the southern part of New York state into two federal judicial districts made perfect sense. *See generally* BERNARD A. GROSSMAN, FEDERAL BAR ASS'N OF NEW YORK, NEW JERSEY, & CONNECTICUT, A HISTORY OF THE UNITED STATES COURT FOR THE EASTERN DISTRICT OF NEW YORK: TO COMMEMORATE AND TO CELEBRATE A CENTENNIUM, 1865–1965, at 7–8 (1965). Of course today, Brooklyn and Manhattan are integral parts of a single city, linked to one another and the remainder of the city's boroughs by numerous bridges, tunnels, and highways. Indeed, it is possible to walk from the United States Courthouse in Brooklyn, across the Brooklyn Bridge, to the United States Courthouse in Manhattan.

Congress has taken notice of the unique circumstances that obtain in New York City, "the only city in the United States which is divided between two judicial districts[,]" S.Rep. No. 96–94, at 1 (1979), on at least two occasions since the Eastern District was established. On the first, it relaxed the requirement that United States attorneys appointed in the Eastern District must reside in that district, thereby making the residency

requirements for the Eastern District the same as those for the Southern District. *See* Act of October 25, 1979, Pub.L. 96–91, 93 Stat. 700 (codified as amended at 28 U.S.C. § 545(a) (1994)). On the second occasion, it extended the same residency exception to United States judges appointed to the Eastern and Southern Districts. *See* Federal Courts Improvement Act of 1996, Pub.L. 104–317, Title VI, § 607, 110 Stat. 3860 (to be codified at 28 U.S.C. § 134(b)). As the Senate Judiciary Committee observed in the first instance, the effect of § 545(a) in the New York City area was entirely "arbitrary"; it operated to "carve out parts of the City as off limits to the United States Attorneys and their Assistants who live and work there." S.Rep. No. 96–94, at 1 (1974).

The same considerations suggest that a mistake in laying venue in one part of New York City instead of another is an error of the most technical kind that does not affect substantial rights of the accused. It is certainly not the kind of structural error that deprives a defendant of a trial that could "'reliably serve its function as a vehicle for the determination of guilt or innocence.'" *United States v. Gonzalez,* 110 F.3d 936, 946 (2d Cir.1997) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (Rhenquist, C.J., concurring)); *accord Sherman v. Smith,* 89 F.3d 1134, 1138 (4th Cir.1996) ("[B]efore a court adds a new error to the list of structural errors (and thereby requires the reversal of every criminal conviction in which the error occurs), the court must be certain that the error's presence would render *every* such trial unfair"), *cert. denied,* —— U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997).

Nor is an error in laying venue the kind of miscue that produces prejudice of a type that is "inherently indeterminate[,]" *Chapman v. California,* 386 U.S. 18, 52 n. 7, 87 S.Ct. 824, 842 n. 7, 17 L.Ed.2d 705 (1967) (Harlan, J., dissenting), or that "def[ies] analysis", *Fulminante,* 499 U.S. at 309, 111 S.Ct. at 1264 (Rhenquist, C.J., concurring). As the Second Circuit observed in a somewhat analogous case:

There is no claim here that [defendant] has been deprived of any Sixth Amendment right to a fair trial. There is no suggestion of inconvenience to witnesses or prejudice to the appellant. The New Jersey to Long Island to Manhattan asportation did not involve a trek through remote and foreign climes but was within the vicinage.

*United States v. DeKunchak,* 467 F.2d 432, 439 (2d Cir.1972).

The factors alluded to in *DeKunchak,* and those to be considered in deciding a request for transfer of venue made pursuant to Fed.R.Crim.P. 21(b), thus provide ample bases for determining whether a defendant has suffered the kind of prejudice that the Venue Clause was intended to prevent. Specifically, these factors include: "(1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents or records likely to be involved; (5) possible disruption of defendant's business if the case is not transferred; (6) expense of the parties; (7) location of counsel; (8) relative accessibility of the place of trial." *United States v. Keuylian,* 602 F.2d 1033, 1038 (2d Cir.1979); *accord United States v. Maldonado–Rivera,* 922 F.2d 934, 966 (2d Cir.1990) (similar list of factors). None of these factors is implicated here in a way that suggests prejudice to the defendant. Indeed, prior to his conviction, defendant apparently did not feel sufficiently prejudiced to seek a transfer of venue pursuant to Rule 21(b), as he ignored my pretrial offer to authorize such a transfer.

Thus, defendant's post-conviction request to have his otherwise proper conviction set aside on purely technical venue grounds should be rejected. This is in keeping with the Supreme Court's persistently dim view of requests to overturn otherwise proper convictions on technical grounds that do not call into question the merits of a jury's findings. "'Cases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered ... and should not unnecessarily infringe on competing interests.'" *Rushen v. Spain,* 464 U.S. 114, 118, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983) (alteration in original) (quoting *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981), and citing for support

*Rogers v. United States,* 422 U.S. 35, 38–40, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975)). In this case, the defendant plainly did not suffer injury of a dimension that would require resort to the kind of extreme remedies that he proposes—namely, a judgment of acquittal or a dismissal of the indictment and reindictment and retrial on the other side of the Brooklyn Bridge.[3]

## CONCLUSION

The defendant was not entitled to either a jury instruction on the issue of venue or to a dismissal on the ground that venue was improperly laid in the Eastern District of New York. Even if it was error to allow this case to proceed in this District, any error was harmless.

---

**3.** While there have been cases in which the Second Circuit has reversed convictions where venue improperly was laid in one part of the City of New York instead of another—*see e.g., United States v. Bozza,* 365 F.2d 206 (2d Cir.1966)—the Second Circuit has not been asked in such cases to consider whether the error in laying venue was harmless, nor has it otherwise had occasion to address the issue under the evolving standards for applying the harmless error rule.