Geraldine PEACOCK, Ella Woodley and Lester J. Wright, Plaintiffs,

v.

Jerry WURF, as President of the American Federation of State, County and Municipal Employees, AFL–CIO, Defendant,

and

James Butler, Alejandro Ruiz and Dorothy Brown, as elected officers of New York City Hospitals Local 420, AFSCME, AFL–CIO, Intervenors.

No. 79 Civ. 2981.

United States District Court, S. D. New York.

Aug. 3, 1979.

Guazzo, Silagi, Craner & Perelson, New York City, for plaintiffs; Mitchell Craner, New York City, of counsel.

Zwerdling & Mauer, Washington, D.C., for defendant.

## MEMORANDUM OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, members of Local 420 of the American Federation of State, County and Municipal Employees ("AFSCME"), commenced this action against Jerry Wurf as President of AFSCME to enjoin internal union hearings scheduled to begin June 13, 1979 on charges filed against them by James Butler, President of Local 420. On June 11, 1979, a temporary restraining order was signed by this Court staying the union proceedings until disposition of plaintiffs' application for a preliminary injunction. Thereafter Butler's motion to intervene was granted. On June 19, 1979, Butler withdrew his charges against plaintiffs, mooting the injunction request, and the action was dismissed on consent. Before the Court is plaintiffs' application for attorneys' fees.

Some background information is in order. In June 1978 the auditor for Local 420 advised its Executive Board that in 1976 Butler received checks from the Local in excess of $18,000 without proper authorization and that he had no receipts to justify these expenses. When the Executive Board of Local 420 took no action, plaintiffs filed charges with the Judicial Panel of AFSCME accusing Butler of financial misconduct. The Judicial Panel accepted jurisdiction and Chairperson Ames designated himself as hearing officer. Butler's attorney sought to have Ames recuse himself, alleging he was politically aligned with the plaintiffs. When Ames refused, Butler commenced proceedings in the United States District Court for the District of Columbia against AFSCME under Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C., section 411 et seq., seeking to enjoin the hearing until Ames was removed. AFSCME consented to the stay. The Executive Board of AFSCME, headed by AFSCME President Jerry Wurf, then removed Ames as hearing

officer, thus mooting the action. The parties agreed to a settlement of the outstanding issue of attorneys' fees and an order was entered awarding Butler, the accused party, fees to be paid by AFSCME.

Plaintiffs, believing they were caught in the middle of an internal union struggle and that Wurf was allied with Butler, withdrew their charges before the Judicial Panel and commenced suit in the state courts against Butler for an accounting of the $18,000. On March 26, 1979, Butler demanded that AFSCME, through the Judicial Panel, discipline plaintiffs pursuant to Article X, § 16 of the union Constitution, which provides for the imposition of penalties on anyone who files charges against a member or officer of the union if the Panel finds that the charges "were not brought in good faith or were actuated by malice." Plaintiffs then brought this suit contending that the disciplinary hearing was instituted in retaliation against them for the exercise of their free speech rights under the LMRDA[1] in their efforts to hold union officials to account for alleged wrongdoing. As noted above, Butler intervened in the action following the issuance of the temporary restraining order and then prior to the hearing on the preliminary injunction he withdrew his charges against the plaintiffs, which were then pending before the union Judicial Panel.

In requesting attorneys' fees, plaintiffs rely on the Supreme Court's decision in *Hall v. Cole*,[2] which applied the "common benefit" doctrine in the context of a suit under the LMRDA. The theory underlying this doctrine is that the plaintiff by vindicating his own rights of free speech renders "a substantial service to his union" and "dispels the 'chill' cast upon the rights of oth-

ers."[3] Thus reimbursement of the plaintiffs' attorneys' fees "out of the union treasury simply shifts the costs of litigation to 'the class that has benefited from them and that would have had to pay them had it brought the suit.'"[4]

Although AFSCME argues plaintiffs' victory here was purely personal and does not represent a final adjudication of the validity of the proceeding Butler sought to subject them to, it is nonetheless clear that plaintiffs have conferred a substantial benefit on their fellow union members. Their initial charges against Butler were prompted by the legitimate concern that he had been mishandling union funds. Those charges were not drawn out of thin air but were based upon the union auditor's report and when union officials failed to act plaintiffs moved to protect the union's interest. Such action by union members, where dereliction of duty is charged against union officials and no action is taken by the union hierarchy to enforce the union's right to recover allegedly misapplied funds, is protected by the free speech provision of the LMRDA in the interest of ensuring proper and honest management of union affairs. And the courts, to safeguard that end, have prohibited unions from disciplining their members even for speech that might otherwise be considered libelous or malicious.[5] Plaintiffs' withdrawal of the charges was motivated by the same concern that they could not receive a fair hearing before the Judicial Panel as prompted Butler to file his suit in the District of Columbia. But plaintiffs were then subjected to Butler's charge that their accusations against him were actuated by malice. Believing that the union machinery was stacked against them, they

---

1. 29 U.S.C. § 411(a)(2).

2. 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

3. *Id.* at 8, 93 S.Ct. at 1948.

4. *Id.* at 9, 93 S.Ct. at 1948 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)); *accord, Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228 at 1245–1246,

(2d Cir. 1979); *McDonald v. Oliver,* 525 F.2d 1217, 1226–28 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

5. *See, e. g., Giordani v. Upholsterers Int'l Union,* 403 F.2d 85, 89 (2d Cir. 1968); *Cole v. Hall,* 339 F.2d 881 (2d Cir. 1965); *Salzhandler v. Caputo,* 316 F.2d 445, 451 (2d Cir.), *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963).

sought redress in this Court. The temporary restraining order stopped that machinery until their claims could be heard upon the merits. The fact that their complaint was not prosecuted to final judgment does not prevent them from being considered "successful litigants" within the meaning of *Hall v. Cole*, for they obtained the relief they sought when Butler withdrew the charges in response to this litigation.[6] That withdrawal also served to dispel the "chill" cast on all union members by the attempted prosecution of these plaintiffs for the exercise of their protected right to criticize their leadership. To require union members, who attempt to call their officials to account for alleged misapplication of funds where there is a substantial basis for the charge and other officials have failed to act, to bear the burden of legal expenses incurred in protecting themselves from disciplinary action would make other union members wary of taking steps to redress alleged wrongdoing. Indeed in this case, it would be an oddity in the law if Butler, the alleged wrongdoer, received his legal fees out of the union treasury, which he did in the sum of $6,927.50, while those who sought to vindicate the union's rights were denied fees.

In sum, the application for attorneys' fees is granted. Although the Court accepts counsel's statement of his regular billing rate of $100 per hour as a reasonable figure, it is of the view, based on its knowledge of the activities in this case, that the cause could have been adequately prepared and presented in less time than that billed. A counsel fee of $1,500 is reasonable. In addition, plaintiffs are entitled to reimbursement for paralegal and other expenses in the sum of $383.30. Submit order.

---

**6.** *See, e. g., Kerr v. Screen Extras Guild, Inc.,* 466 F.2d 1267, 1270–71 (9th Cir. 1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973); *Yablonski v. United Mine Workers of America,* 151 U.S.App.D.C. 253, 259–60, 466 F.2d 424, 430–31 (1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973); *cf. Mezo v. International Union, United Steelworkers of America,* 558 F.2d 1280, 1282–83 (7th Cir. 1977).