Lou MANGO, Denis Hurley, Diane Ziccardi, Diana Mascioni–Shanahan, Kaayrn Johnson, Michael Brachule, Bobbie Richardson, Thomas Tolan, Lillian Bianco–Pereira, Don Arata, Marilyn Coles, Lee Booker and Vincent Galella, Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, LOCAL 1105, Defendants.

No. 90 Civ. 6624 (RWS).

United States District Court, S.D. New York.

June 11, 1991.

O'Connor & Mangan, P.C., Long Island City, N.Y. (J. Warren Mangan, of counsel), for plaintiffs.

Gladstein, Reif & Meginniss, New York City (Walter M. Meginniss, Jr., of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Lou Mango ("Mango"), Denis Hurley, Diane Ziccardi, Diana Mascioni–Shanahan, Kaaryn Johnson, Michael Brachule, Bobbie Richardson, Thomas Tolan, Lillian Bianco–Pereira, Don Arata, Marilyn Coles, Lee Booker and Vincent Galella (collectively referred to as "Mango") have moved for an award of attorney's fees in the underlying action, pursuant to Section 102 of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 412 (the "Act"). For the reasons set forth below,

the motion is granted, except with respect to those items as set forth below.

*The Parties*

Plaintiffs are members of the defendant Communications Workers of America, AFL–CIO, Local 1105 ("Local 1105" or the "Union"), a labor organization located in New York City. Since 1985, Local 1105 has been affiliated with the Communications Workers of America ("CWA") and has been the collective bargaining representative for approximately 7,200 commercial, public communications, sales and headquarters employees working for NYNEX, the New York Telephone Company, and American Telephone and Telegraph Company.

*Facts and Prior Proceedings*

On October 12, 1990, Mango filed this action pursuant to §§ 101(a) and (b) of the Act to compel Local 1105 to hold a special meeting of its membership to permit the membership to decide (a) whether to use the American Arbitration Association ("AAA") in conducting the Union's 1990 election of officers, and (b) whether each candidate for office should be permitted to designate a member of the Union's election committee (the "Committee").

The action arose from the alleged refusal of Local 1105 to call special work locations meetings of its members upon the receipt of a petition of approximately a quarter of its members requesting the Union to determine if the majority of its members want the Union to (a) engage the services of the AAA as described above and (b) to include members of good standing, designated by each candidate running for elective office, to be equal participants in the Committee.

By Order to Show Cause returnable October 19, 1990, Mango moved for a preliminary injunction ordering the Union to hold the meeting sought in the complaint. On October 25, 1990, following a hearing spread out over several days, the Court indicated that it would grant injunctive relief. When the Union heard that the Court was inclined to grant injunctive relief, the Union stated that it would use the AAA and that it would consent to the placement on the election committee of an individual designated by Mango. The Union's commitments having obviated the need for a special meeting of the membership concerning the elections, the Court dismissed the motion as moot. Prior to or during the course of the several days of hearings, the Union agreed to augment the Committee by some one designated by the Mango slate.

By Order to Show Cause dated November 5, 1990, Mango moved for a second preliminary injunction. By this second motion, Mango sought to enjoin the Committee and the AAA from conducting any further election procedures pending a hearing and determination by this Court of the names of persons eligible to participate in the election. Mango's position in the hearing of November 8 was that there were 1,945 names of members in good standing of Local 1105 that did not appear on the Committee's membership list and 2,283 names on the Committee's membership list that were not members in good standing of Local 1105.

On the return date of the motion, Mango learned from the Committee that it had added approximately 600 names to the Membership list from the 1,945 names that Mango sought to include as eligible to receive a ballot from the AAA. The Committee apparently added the names after a review of the mailing list for the election and a comparison of the list with the membership cards in file in the Union's office. That review took place over several days beginning November 5.

In a hearing of November 9, 1990, the Court ruled from the bench to deny Mango's motion:

> Based upon the representation of the [Union] that the membership list will be made available and upon the authority of *Crowley*, in the absence of irreparable injury prior to the denial of a ballot to a union member, the motion is denied.

Under the court's reading of *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 548, 104 S.Ct. 2557, 2569–70, 81 L.Ed.2d 457 (1984), it had no subject

matter jurisdiction of Mango's claim at that time.

Mango's initial fee application sought attorney's fees of $35,890.50, based on a total number of service hours of 184.66. The fee request is based on the number of hours multiplied by the rates of the several attorneys working on the matter. In his reply affidavit, however, counsel for Mango revised this figure downward to $29,240.50 to reflect the inadvertent inclusion in the request for attorney's fees of work that had been done for the same client on other matters, either prior to the preparation of the first order to show cause, or unrelated matters during the time of the litigation of this matter.

Thus, the remaining differences between the parties in this fee application center on two issues: (1) whether the attorney billings relating to the preparation of the second order to show cause should be part of an attorney's fee award and (2) the reasonableness and adequacy of description of the services rendered.

*Discussion*

*Prevailing Party*

■ In *Rosario v. Amalgamated Ladies Garment Cutters' Union,* 749 F.2d 1000 (2d Cir.1984), the Second Circuit held that the standards for the determination of attorney's fees in litigation under Title I of the Act are those which the Supreme Court enunciated for determining fees under 42 U.S.C. § 1988. Specifically, the Second Circuit adopted the criteria set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) for review of fee application under the Act. Among the *Hensley* factors determining whether an applicant receives fees is whether the applicant has prevailed: "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from all other claims, the hours spent on his unsuccessful claim should be excluded in determining the amount of the fee." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943.

In *Rosario,* the Second Circuit considered whether a reversal on appeal of one of the several components of a damages award in an action brought under Title I of

the Act required the denial of fees spent in litigation of that particular claim. The court upheld the award of fees for the claim that had been reversed on the grounds that the litigation of that claim "had the potential effect of deterring the union from denying members their due process procedural rights guaranteed by § 101 of the [Act] and of encouraging the union members to enforce those rights under § 102 [of the Act]."

■ In the instant case, the filing of the second order to show cause resulted in the Union's taking at least some of the actions with regard to the membership lists requested in the petition. Moreover, the second order to show cause cannot be said to take up claims distinct from those presented in the complaint where the issue addressed—the composition of the balloting list—was part of the petition which formed the basis for this action when Committee failed to act on it. Mango's demands made over the course of this litigation relating to the composition of the Committee, the membership mailing lists and the appointment of the AAA to oversee the election all emanate from the issue that is the core of the complaint: the Union's election procedures. As the subject of the second order to show cause was within this core, and as Mango achieved some success in this litigation, he should not be denied an award of fees relating to the second order to show cause.

*Reasonableness*

■ *Hensley* further requires that fees sought be "reasonably expended." 461 U.S. at 434, 103 S.Ct. at 1939. The Union challenges the reasonableness of several of those fee requests that are at this time before the court. In particular, the Union challenges the reasonableness of spending five hours on preparation and service of two subpoenas at the rate of $175 an hour. While Mango in his reply papers has responded that the requirement of having the clerk of the court execute copies of the subpoenas accounts for the number of hours spent on such task, he does not ex-

plain the necessity of having a lawyer perform such functions. Accordingly, he can recover $100.00 an hour, the lower of the two attorney rates, for such activities.

The Union also takes issue with the reasonableness of having a partner spend seven hours on October 12 reviewing and preparing papers that an associate had already spent 23.5 hours in preparing. Mango does not address this issue directly in his reply papers. Accordingly, the amount of hours which Mango may recover for this activity is 3.5.

### Descriptions of Services Rendered

A fee application must be supported by contemporaneous time records which describe with specificity the work done. *New York State Asso. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In *Orshan v. Macchiarola*, 629 F.Supp. 1014 (E.D.N.Y.1986), the court disallowed a claim for fees for time supported only by such specifications as "prepare correspondence" and "review correspondence."

The Union challenges several of the entries on such grounds: (1) the three hours on October 18 attributed to "conference"; (2) the three hours on October 20 relating to "research"; (3) the hour on October 22 ascribed to "consultations"; and (4) twenty minutes on October marked as "conference." Such descriptions clearly do not meet the standards followed in the Second Circuit as set forth above. Accordingly, those fees will be reduced by 50%.

### Conclusion

For the reasons set forth above, Mango's motion for attorney's fees is granted except with respect to those items that are reduced as set forth above. The Parties will submit a judgment.

It is so ordered.