**NEW LEADERSHIP COMMITTEE,**
**et al., Plaintiffs,**

**v.**

**William DAVIDSON et al., Defendants.**

**No. 97 CV 2271 (NG) (CLP).**

United States District Court,
E.D. New York.

Oct. 8, 1998.

Order Supplementing Report
and Recommendation
March 24, 1998.

Franklin K. Moss, Sara Corello, Adrienne L. Saldana, Spivak, Lipton, Watanabe, Spivak & Moss, New York City, for Plaintiffs.

Joel C. Glanstein, Howard Wein, O'Donnell, Schwartz, Glanstein & Rosen, New York City, for Defendants.

## MEMORANDUM & ORDER

GERSHON, District Judge.

The plaintiffs, all members of the Flushing New York Local of the American Postal Workers Union ("Local"), moved by order to show cause, dated April 28, 1997, for a preliminary injunction against certain Local officers and appointed members of the election committee of the Local. Plaintiffs alleged nine claims based on violations of the Labor

Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(1), (2), (5), and 431(c), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in connection with an alleged scheme by defendants to suppress dissent within the Local. Prior to and during the course of an evidentiary hearing before the Honorable Cheryl L. Pollak, Magistrate Judge, to whom the matter had been referred, the parties agreed to settle some of the claims. On May 16, 1997, following completion of the hearing, which by agreement addressed only claims four and five, Magistrate Judge Pollak issued a Report recommending the granting of relief to plaintiffs on these claims. On May 19, 1997, the parties entered into a stipulation, in which the defendants agreed to provide the relief recommended by Magistrate Judge Pollak and settled as well the remaining claims. The issue of attorneys' fees was referred to Magistrate Judge Pollak.

I have reviewed the comprehensive Report of Magistrate Judge Pollak, dated December 5, 1997, the Supplemental Declaration of Adrienne L. Saldana, Esq., filed in accordance with the Report, defendants' objections to the Report, plaintiffs' response to those objections, defendants' reply to plaintiffs' response, the Declaration of Adrienne L. Saldana, Esq., requesting additional attorneys' fees of $1650 incurred in responding to defendants' objections to the Report, and the Supplemental Report, dated March 13, 1998, to which no objections have been filed.

█ Defendants contend that the Magistrate Judge erred in concluding that the litigation commenced by plaintiffs was a catalyst for the benefits received by the class of beneficiaries under the common benefit theory of attorneys' fees; that she erred in concluding that the benefits received by the plaintiffs were proportionate to those received by the class; and that she erred in concluding that this litigation conferred substantial and not speculative benefits upon the class. Magistrate Judge Pollak's report thoroughly and accurately addresses each of these arguments. As she stated:

> Each of the provisions of the settlement in this case generally benefitted the union membership by reaffirming the commitment that union affairs would be conducted in accordance with established procedures;

that union elections would be conducted in a fair and informed manner; and that dissenting union members would not be subjected to disciplinary action or retaliation for exercising their rights to free speech. Thus, while defendants attempt to minimize the significance of the agreement to abide by Robert's Rules of Order, the allegations in the complaint and the testimony presented to this Court suggest that a reminder of their obligation to comply was necessary. Similarly, to the extent that the lifting of the disciplinary charges against plaintiff McGrath conferred a substantial personal benefit on him, it also dispelled whatever "chill" that had resulted from the discipline upon the free speech rights of all Local members. Finally, while Ms. Kim's reinstatement to the ballot conferred an obvious personal benefit upon her, in fact, the most important right affected by her reinstatement was the right of those members who wished to vote for her. The fact that she ultimately did not prevail in the election is utterly irrelevant.

Report, p. 10; *see also* Report, p. 11, n. 4.

█ The magistrate judge also correctly concluded that the absence of a judgment was not a bar to an award of attorneys' fees. Indeed, the settlement of the fourth and fifth claims, which were the subject of the evidentiary hearing before Magistrate Judge Pollak, effectively adopted her Report dated May 16, 1997, and it was for that reason that no determination on the merits, or judgment, was issued by this court. The law favors settlements. The plaintiffs were required to litigate the issues, and the defendants agreed to provide the relief requested only after the issuance of a formal Report of a United States Magistrate Judge recommending that the relief be awarded. As Magistrate Judge Pollak found, there can be no question about the litigation's causal effect on the defendants' conduct.

█ As to the rates awarded, Magistrate Judge Pollak found that the rates requested, $275 for the partner, $200 for a highly experienced associate, $150 for a less-experienced associate and $65 for each of two law students, were reasonable. Magistrate Judge Pollak noted that the parties had not submit-

ted, and she had not found, any Eastern District cases suggesting that plaintiffs' counsels' rates "are not within the range of prevailing rates for attorneys engaged in this type of practice in the Eastern District. Indeed, even if the prevailing rate was lower in this district, the rates charged by plaintiffs' counsel here are in fact somewhat lower [than] the rates used to calculate fees in the Southern District." Report, p. 12.

Defendants now submit the affidavits of two labor lawyers who practice in the Eastern District of New York who do not opine on "prevailing" rates in the community, but state what their rates are. Thus, the affidavit of Daniel T. Campbell, Esq., states that he has an office in Floral Park, New York, for the practice of "employment law" and that, with respect to employment law litigation, in which he is experienced, his "customary hourly rate is $250." The affidavit of Thomas J. Lilly, Esq., of Garden City, New York, states that the fees his firm charges a union it is now representing (which are, he states, typical of his firm's fees), are $210 for a senior litigation partner, $190 for a junior litigation partner, and $150 for associates.

■ To begin with, the defendants had a full opportunity to present such evidence to the magistrate judge, but failed to do so. De novo review must include only an examination of the record accumulated before the magistrate judge; it need not afford the parties at this late stage an opportunity for a new evidentiary hearing. See, e.g., Gwen Sportswear, Inc. v. State Mutual Life Assurance Co. of America, 1991 WL 130892, *1 (S.D.N.Y.). I therefore decline to consider the additional affidavits submitted by the defendants. Even if considered, as the additional affidavits merely state the rates of two firms and do not address the broader issue of prevailing rates in the community, they would be insufficient to establish that Magistrate Judge Pollak had erred in any way.

Defendants also argue that the magistrate judge erred in considering the rates of attorneys from the Southern District of New York. They suggest that Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir.1997) forbids the court, in its broad discretion to set reasonable attorneys' fees, from taking into account attorneys' rates from districts other than the one in which the court sits. In

Luciano, the trial judge, Judge Spatt, had refused to apply the prevailing rates in the Southern District of New York in awarding attorneys' fees to a Manhattan-based lawyer in an action litigated in the federal courthouse at Uniondale on Long Island. Luciano v. Olsten Corp., 925 F.Supp. 956 (E.D.N.Y.1996). The Court of Appeals for the Second Circuit affirmed the court's use of its "broad discretion" to set reasonable attorneys' fees and stated that, "[b]ecause this action was commenced and litigated in the Eastern District of New York, the district court's reliance on these rates [of the Eastern District] was proper." Luciano, 109 F.3d at 115–16.

Defendants overstate the holding of Luciano if they read it to mean that Southern District of New York rates can never be considered in fixing rates in the Eastern District of New York. Because they divide New York City, the Eastern and Southern Districts of New York are unique districts, and many New York City lawyers practice in two separate federal jurisdictions within the same city. The division of what is now New York City into two separate districts occurred in 1865 at a time when "Brooklyn was a separate city with no physical links to New York City—a municipality then consisting only of Manhattan Island." United States v. Hart–Williams, 967 F.Supp. 73, 79 (E.D.N.Y. 1997) (citation omitted). Though in a different context, Judge Korman's comments in Hart–Williams, are equally apt here:

> Of course today, Brooklyn and Manhattan are integral parts of a single city, linked to one another and the remainder of the city's boroughs by numerous bridges, tunnels, and highways. Indeed, it is possible to walk from the United States Courthouse in Brooklyn, across the Brooklyn Bridge, to the United States Courthouse in Manhattan.

Id. Congress has recognized the uniqueness of the Eastern and Southern Districts of New York by allowing an exception from the normal district residence requirement for U.S. Attorneys and federal district judges in these districts, an exception which allows United States Attorneys and district judges to reside in one district and work in the

other. *See* 28 U.S.C. § 545(a) (U.S.Attorneys); 28 U.S.C. § 134(b) (district court judges). And the district judges of the two districts have recognized the unique circumstances facing New York City lawyers in adopting a single set of Local Rules applicable, with limited exceptions, in both districts.

■ *Polk v. New York State Dept. of Correctional Services,* 722 F.2d 23 (2d Cir.1983), upon which the Second Circuit relied in *Luciano,* recognized the importance of not creating incentives for lawyers to bring cases in districts with higher attorneys' fees for the sole purpose of attaining heightened fees. *Polk,* 722 F.2d at 25. On the other hand, although the "American Rule" bars the recovery of attorneys' fees in general, those statutes or theories under which attorneys' fees can be shifted are based upon the policy of encouraging lawsuits to vindicate important rights that otherwise might not be vindicated. *See, e.g., Rodonich v. Senyshyn,* 52 F.3d 28, 32–33 (2d Cir.1995). With this in mind, the Second Circuit's *Luciano* decision should not be read so strictly as to create an unreasonable disincentive for Manhattan-based attorneys to bring such suits in Brooklyn. Indeed, in *Polk,* although not in the New York City context, the Second Circuit reversed the district court's exclusive reliance on the lower rates in the Northern District of New York, under circumstances where the facts indicated that the court could also have considered Southern District rates. *Polk,* 722 F.2d at 25. As stated in *Polk,* "district judges retain broad discretion in determining 'reasonable' attorney's fees," and "the rate prevailing in the appropriate community is only one of many factors bearing on determination of a fee award." *Id.*

This is not to say that a single rate should prevail across the board in New York City. But it is to recognize that, in determining prevailing rates for suits brought in this Courthouse, it is not necessarily improper to consider what is occurring minutes away across the East River. In sum, it is within the court's broad discretion to consider the unique circumstance of lawyers in New York City who practice in two different federal jurisdictions within the same city. The magistrate judge therefore did not abuse her discretion to establish reasonable attorneys' fees by taking into account the rates charged by lawyers practicing in the Southern District of New York.

■ Defendants also contend that the $503.75 in fees for students should be omitted from the fee award. They note that the magistrate judge did not cite any authority for including law students within her award of attorneys' fees. Undoubtedly that is because it is so well established that, so long as the rates charged and hours spent are reasonable, fees for students are recoverable. *See, e.g., Jones v. Kreisel Company, Inc.,* 1995 WL 681095, *2 (S.D.N.Y.); *Burr v. Sobol,* 748 F.Supp. 97, 100 (S.D.N.Y.1990).

■ Finally, plaintiffs are awarded costs of $652. Plaintiffs have amply supported an award of $440 for process servers, $212 for photocopies, and $150 for the filing fee. Defendants' objection to these awards, that the magistrate judge did not provide any "explanation or precedent" for allowing plaintiffs to submit additional proof respecting these costs within 14 days of her Report, is frivolous. The issue of attorneys' fees and costs was referred to the magistrate judge. That referral provided her with authority to exercise her discretion as to the procedures to be followed. Allowing further documentation to be submitted was not an abuse of her discretion.

## CONCLUSION

The Report of December 5, 1997 and the Supplemental Report dated March 13, 1998, are adopted. Plaintiffs are awarded $56,-636.25 in attorneys' fees and $802 in costs.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION*

POLLAK, United States Magistrate Judge.

By order to show cause, dated April 28, 1997, the plaintiffs, all members of the Flushing New York Local of the American Postal Workers Union ("Local"), moved for a preliminary injunction against certain Local officers and appointed members of the election committee of the Local, alleging nine separate causes of action based on violations of the Labor Management Reporting and Dis-

closure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(1), (2),(5), and 431(c) and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in connection with an alleged scheme by defendants to suppress dissent within the Local. Following referral of the matter to the undersigned by the Honorable Nina Gershon for report and recommendation, a hearing was scheduled on the order to show cause for May 8, 1997. Prior to and during the course of the hearing which spanned several days, the parties agreed to settle certain claims.

On May 19, 1997, following the issuance by this Court of a report and recommendation addressing the fourth and fifth causes of action, the parties entered into a stipulation resolving the remaining six causes of action, with both parties reserving their rights to seek attorneys' fees.

By Notice of Motion dated August 5, 1997, plaintiffs now move for an order granting them attorneys' fees and costs in the amount of $54,966.25. By Order dated September 8, 1997, the motion was referred to the undersigned to prepare a report and recommendation.

### FACTUAL BACKGROUND

In their complaint, plaintiffs alleged several causes of action relating to disciplinary charges against plaintiff John McGrath, a union steward, the removal of plaintiff Incha Kim from the ballot for the Local's June 1997 election, a moratorium on amendments to the Local Constitution and By–Laws, and the Local's right to inspect records.[1] On May 2, 1997, prior to the commencement of the hearing, the parties entered into a stipulation permitting plaintiffs to inspect various records of the Local in exchange for the dismissal of the sixth cause of action which alleged that defendants had violated Section 201(c) of the LMRDA by denying plaintiffs access to Local records. Following the first day of the hearing, on May 9, 1997, the parties entered into a second stipulation, in which defendants agreed to dismiss all disciplinary charges pending against plaintiff John McGrath and to reinstate him to his position as union steward, with all the benefits of that position. In return, plaintiffs agreed to dismiss the first cause of action, relating to the Local's disciplinary charges against McGrath, and the second cause of action, relating to his removal as union steward.

Following the second day of the hearing, this Court issued its Report and Recommendation as to the claims set forth in plaintiffs' fourth and fifth causes of action, concluding that defendants had engaged in a pattern to suppress dissent within the Local by declaring a moratorium on amendments to the Local Constitution and by removing Ms. Kim from the ballot. Prior to receiving a final order from the district court with respect to the Report, the parties entered into a third stipulation, dated May 19, 1997, resolving the remaining claims in the action. Specifically, defendants agreed: 1) to restore Ms. Kim to the ballot and publicize her candidacy; 2) to lift the moratorium on amendments; and 3) to conduct all future membership meetings in accordance with Robert's Rules of Order. In return, plaintiffs agreed to dismiss the fourth and fifth causes of action, along with the remaining claims in the complaint.[2]

Plaintiffs contend that they are entitled to an award of attorneys' fees because the three stipulations of settlement not only conferred benefits on the individual plaintiffs, but also conferred common benefits on the Local's members. *See Hall v. Cole*, 412 U.S. 1, 8, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Specifically, they cite as common benefits the remedying of violations of the LMRDA and LMRA; the preservation of union democracy by encouraging enforcement of members' rights and discouraging future violations; the

---

1. The details of the dispute in this case were set forth more fully in this Court's Report and Recommendation dated May 16, 1997, familiarity with which is presumed.

2. The causes of action remaining as of the issuance of this Court's Report were the third cause of action, which alleged that defendants had failed to conduct a proper vote on certain amendments presented at the October 1996 membership meeting; the eighth and ninth causes of action, which related to defendants' actions in canceling or adjourning certain membership meetings; and the seventh cause of action, which concerned defendants' improper removal of plaintiff Robert More from the membership meeting in March 1997.

assurance of proper future management; and the provision for a more informed election.

Defendants object to an award of fees in this case, arguing that the litigation primarily produced personal benefits to plaintiffs and that any benefits conferred on the membership of the Local are speculative and of minor consequence in proportion to the personal benefits of plaintiffs. Defendants further argue that because no final judgment was entered, it cannot be proven that the litigation was a catalyst for any benefits conferred on plaintiffs. Accordingly, the Local argues that the membership should not be forced to bear the costs and fees of this litigation.

## DISCUSSION

█ It is undisputed that in the absence of statutory or contractual authority to the contrary, each party to a litigation bears its own burden of attorney's fees regardless of which party ultimately prevails. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). There are, however, certain exceptions to this "American Rule," where courts have allowed fee shifting under certain circumstances. In *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 393–94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court permitted fee shifting in circumstances where "a substantial benefit [is conferred] on the members of an ascertainable class and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." This "common benefit" doctrine was subsequently applied in *Hall v. Cole*, 412 U.S. at 5–9, 93 S.Ct. 1943, to award fees and costs to a plaintiff whose successful vindication of his rights under Title 1 of the LMRDA conferred a common benefit on the union. The Supreme Court, in affirming the district court's decision, which required the union to pay plaintiff's attorneys fees and costs, explained:

> "Fee-shifting" is justified in these cases ... because "to allow the other[ ] [members of the class] to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses

would be to enrich the others unjustly at the plaintiff's expense" .... [R]eimbursement of the plaintiffs' attorneys' fees out of the corporate treasury simply shift[s] the costs of the litigation to "the class that has benefitted from them and that would have had to pay them had it brought the suit."

*Hall v. Cole*, 412 U.S. at 5–6, 93 S.Ct. 1943 (quoting *Mills v. Electric Auto–Lite*, 396 U.S. at 392, 397, 90 S.Ct. 616).

Numerous cases since *Hall* have similarly awarded fees and costs in cases involving labor disputes where the court has made a finding that the litigation has conferred a common benefit on the union. *See, e.g., Rodonich v. Senyshyn*, 52 F.3d 28 (2d Cir.1995) (reversing a denial of fees and holding that even though the litigation produced only monetary damages and no equitable relief, the litigation conferred a common benefit by deterring future misconduct and dispelling the chill cast on other members' rights by defendant's misconduct); *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 749 F.2d 1000 (2d Cir.1984) (awarding $90,976.50 in fees and costs, where the court found that a common benefit had been conferred on the union by plaintiffs' suit under the LMRDA, which acted as a deterrent for future Title I violations even though certain claims were reversed on appeal); *Mango v. Communications Workers of America, Local 1105*, 765 F.Supp. 152, 154 (S.D.N.Y.1991) (finding a common benefit conferred where the filing of the lawsuit caused defendants to act in a way so as to vindicate all members' rights); *Johnson v. Kay*, 742 F.Supp. 822, 834–36 (S.D.N.Y.1990) (awarding fees and costs where the settlement of claimed violations of Title I rights resulted in a common benefit for union members); *Peacock v. Wurf*, 475 F.Supp. 65, 66 (S.D.N.Y.1979) (awarding attorneys' fees under the common benefit doctrine where the union's request for an injunction was mooted when defendant, union president, withdrew the charges against plaintiffs and the case therefore was not prosecuted to final judgment). Indeed, courts have even awarded fees and costs where a plaintiff has been successful in some but not all claims, reasoning that since the claims were based on a "common core of facts," all of the hours spent on the case

should be included in the award. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (permitting in a fee award the hours spent on claims not related to those giving rise to the award if the claims involve a "common core of facts" or are "based on related legal theories"); *Guzman v. Bevona,* 152 L.R.R.M. (BNA) 3048, 3050–51 (S.D.N.Y.1996) (awarding the full amount of fees of $353,431.00 and costs of $25,222.96 for the successful prosecution of only some of plaintiffs' claims under Sections 101 and 501 of the LMRDA and Section 301 of the LMRA).

■ In cases where something short of a judgment by the court resolves a lawsuit, such as a settlement, a plaintiff must demonstrate that the litigation was the catalyst or a proximate cause for a result that produces benefits for the whole class. *See, e.g., Koppel v. Wien,* 743 F.2d 129, 134–35 (2d Cir. 1984) (on a motion for fees, noting that plaintiffs had made a strong showing that the result obtained was proximately caused by the lawsuit even though the action was dismissed as moot because the relief sought was otherwise obtained); *Goldberg v. Hall,* 131 L.R.R.M. (BNA) 2112, 2115 (S.D.N.Y.1988) (awarding attorneys' fees where the case was resolved after findings were made adverse to defendants, but prior to the rendering of a decision, finding "[t]he nexus between plaintiff's lawsuit and the union's reversal of the decision [prompting plaintiff's suit] evident"), *aff'd,* 873 F.2d 1435 (2d Cir.1989).

Defendants argue that in this case, plaintiffs have failed to satisfy their burden of showing that the litigation produced benefits for the whole class. Instead, they contend that although the settlement may have conferred a "de minimis" benefit on the class, the benefits to plaintiffs were disproportionately higher and thus, fee-shifting should be denied as unjust. *See Guidry v. International Union of Operating Eng'rs, Local 406,* 882 F.2d 929, 944 (5th Cir.), *vacated on other grounds,* 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990), *cert. denied,* 498 U.S. 1016, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990); *Shimman v. International Union of Operating Engin'rs, Local 18,* 744 F.2d 1226, 1235 (6th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Specifically, they argue that with respect to the

first, second, and fifth causes of action, the only benefits conferred as a result of the settlement were conferred on plaintiffs McGrath and Kim, who benefitted personally by their reinstatement as shop steward and as election candidate, respectively. Similarly, defendants argue that settlement of the sixth cause of action benefitted only the two individuals—plaintiffs McGrath and More— who actually sought to examine the Local's records.

With respect to the settlement of the fourth cause of action rescinding the moratorium, defendants concede that this arguably conferred a benefit on the entire class, but they contend that the class benefit is entirely speculative because there is no evidence that anyone other than plaintiffs wished to propose any amendments during the period of the moratorium.

With respect to the third, seventh, eighth, and ninth causes of action, defendants contend that all that was obtained by plaintiffs as a result of the settlement was a promise by the Local to abide by the Local's preexisting rule that all Local meetings be conducted in accordance with Robert's Rules of Order. Thus, they argue that there was little, if any, benefit conferred on the membership by resolution of these issues.

Finally, defendants contend that because the settlement was reached before the district court was given an opportunity to review this Court's Report and Recommendation on the two causes of action relating to the moratorium and to plaintiff Kim's candidacy, there has been no judgment entered finding that union democracy free speech rights were in jeopardy. Thus, they argue that there can be no finding that plaintiffs' instigation of the litigation resulted in a "vindication" of those rights, and plaintiffs cannot claim this as a basis for an award of fees. (Defs.' Mem. in Opp. at 10).

Turning first to defendants' argument that fees should not be awarded here because there was no final decision on the issue of whether any union rights were jeopardized by defendants' actions, this Court notes that defendants have cited no case which has actually denied fee shifting based on the lack of a final decision on the merits. On the

contrary, a number of decisions actually cited by defendants suggest otherwise. *See Koppel v. Wien,* 743 F.2d at 135 (remanding for a determination of fees even though no final determination had been entered); *Goldberg v. Hall,* 131 L.R.R.M. at 2114–15 (awarding fees although no final decision was rendered); *see also Johnson v. Kay,* 742 F.Supp. at 834 (awarding fees and costs in the context of a settlement and noting that "the relevant inquiry is not into the technical posture of the litigation, but whether it 'has conferred a substantial benefit on the members of an ascertainable class'") (quoting *Mills v. Electric Auto–Lite Co.,* 396 U.S. at 393–94, 90 S.Ct. 616).

Here, this Court conducted two days of hearings and heard testimony not only on defendants' alleged violations of Ms. Kim's rights, caused by her wrongful removal from the ballot, but also on the issue of the legality of the imposition of a moratorium on constitutional amendments during the pendency of a hotly contested electoral challenge. Even though this Court's Report and Recommendation finding that defendants had violated specific provisions of the LMRDA and the LMRA was never ruled on by the district court, it cannot be disputed that through the settlement, plaintiffs obtained, in essence, everything that they had been seeking in these two causes of action—namely, Ms. Kim's reinstatement on the ballot and a lifting of the moratorium. This Court disagrees with defendants' contention that the settlement·did not confer a benefit on the entire class because there is no indication that anyone other than plaintiffs wished to propose an amendment during the moratorium[3] and because Ms. Kim nonetheless lost the election. To the contrary, this Court finds that defendants' actions in implementing the settlement still conferred a general benefit on the membership by sending the message to the other Local members that members' essential rights would be respected. As the Court in *Farkas* noted, "A benefit may be 'intangible and indirect, even atmospheric' and still be substantial, . . . as long as it affect[s] the enjoyment or protection of an essential right.'" *Farkas v. Soft Drink & Brewery Workers*

*Local 812,* 154 L.R.R.M. (BNA) 2535, 2538 (S.D.N.Y.1996) (quoting *Rodonich v. Senyshyn,* 52 F.3d 28, 33 (2d Cir.1995) and *Amalgamated Clothing & Textile Workers Union v. Wal–Mart Stores, Inc.,* 54 F.3d 69, 71 (2d Cir.1995), respectively).

Each of the provisions of the settlement in this case generally benefitted the union membership by reaffirming the commitment that union affairs would be conducted in accordance with established procedures; that union elections would be conducted in a fair and informed manner; and that dissenting union members would not be subjected to disciplinary action or retaliation for exercising their rights to free speech. Thus, while defendants attempt to minimize the significance of the agreement to abide by Robert's Rules of Order, the allegations in the complaint and the testimony presented to this Court suggest that a reminder of their obligation to comply was necessary. Similarly, to the extent that the lifting of the disciplinary charges against plaintiff McGrath conferred a substantial personal benefit on him, it also dispelled whatever "chill" that had resulted from the discipline upon the free speech rights of all Local members. Finally, while Ms. Kim's reinstatement to the ballot conferred an obvious personal benefit upon her, in fact, the most important right affected by her reinstatement was the right of those members who wished to vote for her. The fact that she ultimately did not prevail in the election is utterly irrelevant.

Accordingly, because this Court finds that plaintiffs' instigation of this suit was the catalyst or causal factor behind the settlement, and because overall, the benefits conferred on the class were substantial, this Court respectfully recommends that the burden of paying plaintiffs' attorneys' fees be shifted to defendants in this case. Moreover, because the claims that prompted this litigation all arise out of the same common core of facts—namely, the challenge by the New Leadership Committee to the incumbent Local leaders—this Court recommends that fees be awarded for hours expended in pursuit of all

---

3. In *Koppel v. Wien,* the Second Circuit explained that "[i]t is immaterial to an award of attorney's fees whether beneficiaries claim or accept the benefits obtained on their behalf." 743 F.2d at 134.

of plaintiffs' causes of actions, even those which defendants contend failed to confer a common benefit on the class.[4] *See, e.g., Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. 1933; *Guzman v. Bevona*, 152 L.R.R.M. at 3050–51.

### Attorneys' Fees

Plaintiffs seek reimbursement for legal fees of $54,966.25. In accordance with the requirements of *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983), plaintiffs have submitted the Declarations of Franklin K. Moss, and Adrienne L. Saldana, attorneys with the firm of Spivak, Lipton, Watanabe, Spivak & Moss, counsel for plaintiffs, as well as contemporaneous time records of the hours spent litigating the case. These records indicate the nature of the work performed by each attorney, the date, and the hours expended.

Specifically, it appears from the affidavits of Mr. Moss and Ms. Saldana that five attorneys or law students worked on this matter from plaintiffs' firm: 1) Mr. Moss, a partner with the firm who has engaged in labor law practice "almost exclusively" since 1981 (Moss Aff. ¶ 2); 2) Sara Corello, Esq., an associate with the firm engaged in the practice of labor and employee benefits law for approximately four years; 3) Ms. Saldana, also an associate, practicing with the firm on labor matters since 1994; 4) Thomas Murray, a third year student; and 5) Denis Duffey, also a law student. Their respective hourly billing rates—$275 for Mr. Moss, $200 for Ms. Corello, $150 for Ms. Saldana, and $65 for the law students—appear to be commensurate with the billing rates utilized in fee awards in labor cases in the Southern District of New York. *See, e.g., Farkas v. Soft Drink & Brewery*, 154 L.R.R.M.(BNA) 2535, 2540 (S.D.N.Y.1996) (finding reasonable hourly rates ranging from $135–$275); *Schermerhorn v. Transport Workers Union of America Local 100*, 151 L.R.R.M. (BNA) 2861, 2864 (S.D.N.Y.1996) (finding $300 per

hour reasonable for a partner). While the Second Circuit has held in an employment discrimination suit that the prevailing market rate should be that for attorneys practicing in the Eastern District of New York, *see Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997), the parties have not cited nor has this Court found any cases in the Eastern District of New York that would suggest that plaintiffs' counsels' rates are not within the range of prevailing rates for attorneys engaged in this type of practice in the Eastern District of New York. Indeed, even if the prevailing rate was lower in this district, the rates charged by plaintiffs' counsel here are in fact somewhat lower that than the rates used to calculate fees in the Southern District. Accordingly, this Court recommends that the rates sought be approved.

Moreover, a review of the actual hours spent and the tasks performed suggests that the request for fees is reasonable. The time spent included research and preparation for the filing of the complaint, the preliminary injunction papers, and the order to show cause, research and preparation of witnesses for the hearing, the conduct of the hearing itself, drafting of proposed findings of fact and law, review of this Court's Report, negotiations and review of settlement papers, preparation and research in connection with the attorneys' fees application and the reply. The vast majority of the hours at both the hearing and in preparation for the hearing were spent by the associates, 122.5 hours by Ms. Corello and 177.75 hours by Ms. Saldana.

Based on this Court's review of the contemporaneous billing records submitted, it is respectfully recommended that plaintiffs' counsel be awarded fees in the amount of $54,986.25.

### COSTS

Plaintiffs also seek reimbursement for costs and expenses totaling $2,372.56. In his declaration, plaintiff's counsel, Mr. Moss, has presented a breakdown of disbursements re-

---

4. Apart from the claims relating to plaintiffs Kim and McGrath, defendants argue that they were willing all along to allow McGrath and More to review union records and that no litigation was necessary to enforce this agreement. While this Court was never requested to rule on this claim, it is clear that the issue of access was disputed by the parties prior to the commencement of the

litigation, and continued to be disputed for some time until the settlement was reached. Thus, defendants' arguments that the litigation had no effect on this issue is troubling. Clearly, as a result of the lawsuit, defendants clarified and confirmed in a written agreement their obligation to provide access.

corded consistently with the firm's usual operating procedures. These include the costs of the court reporters' fees, photocopies, facsimile transmissions, secretarial overtime, messengers, transportation expenses, postage, long distance telephone calls, Westlaw and Lexis research, and process servers.

Defendants argue that, with the exception of fees for the court reporters and certain other miscellaneous costs set forth under 28 U.S.C. § 1920, plaintiffs are not entitled to recover costs, and that many items for which plaintiffs seek reimbursement constitute "expenses" which are not reimbursable, including secretarial overtime, postage, facsimile transmissions, use of process servers, messengers, computerized legal research, transportation, and long distance phone calls. In addition, defendants argue that for the costs which are reimbursable, plaintiffs have failed to sufficiently document those costs apart from the court reporters' fees, which defendants verify as accurate.

Rule 54(d) of the Federal Rules of Civil Procedure provides, in relevant part: "Except when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." The term "costs" is defined by 28 U.S.C. § 1920, see *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), which operates as the general provision for taxation of costs absent any other specific statutory authority. *See Kuzma v. I.R.S.*, 821 F.2d 930, 932 (2d Cir.1987).

▮▮▮▮ Plaintiffs argue that costs in LMRDA cases should be awarded according to the standards prescribed by 42 U.S.C. § 1988, which governs the award of fees in civil rights cases, and that since the policy behind fee-shifting schemes is to enable and encourage lawsuits of this nature, all "normal litigation expenses" should be included in an award of attorneys' fees. (Pl's. Reply Mem. at 9). However, it is clear that an award of costs in LMRA and LMRDA cases is governed by 28 U.S.C. Section 1920. *See, e.g., Murphy v. International Union of Operating Eng'rs, Local 18,* 774 F.2d 114, 132 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986); *Mi–Jack Prods. v. International Union of Operating Engineers, Local 150,* No. 94 C 6676, 1996 WL 139249, at * 1 (N.D.Ill. Mar.26, 1996); *Petramale v. Local No. 17 of Laborers' Int'l Union of North America,* No. 81 CIV 4817, 1992 WL 212605, at *8 (S.D.N.Y. Aug. 25, 1992); *Bollitier v. International Brotherhood of Teamsters,* 735 F.Supp. 623, 629 (D.N.J. 1989). Moreover, while federal courts have discretion to decline to award the costs enumerated in Section 1920, courts may not exceed the limits of this section and award non-enumerated costs unless there is authorization by statute or contract. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. at 443–45, 107 S.Ct. 2494. Section 1920 limits costs to fees for the clerk and marshal, court reporter, printing and witnesses, photocopies of papers necessary for use in the case, docketing, and experts.

▮▮▮▮ Defendants concede that the $685.75 for court reporter services is reimbursable.[5] With respect to photocopies, this Court agrees with defendants that plaintiffs have failed to provide sufficiently specific documentation. Exemplification costs may be shifted pursuant to Section 1920, but the party seeking them must "itemize those costs or explain why all those copies were necessary." *United States v. Merritt Meridian Constr.,* 95 F.3d 153, 173 (2d Cir.1996). Moreover, this Court notes that Local Rule 54.1(c)(5) provides that "[t]he cost of copies used for the convenience of counsel or the court are not taxable."[6] *See also Baker v.*

---

**5.** Defendants claim that this amount has already been paid to plaintiffs. If this is indeed the case, then this amount shall not be part of the cost award.

**6.** Local Civil Rule 54.1 provides:

Within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal, unless this period is extended by the court for good cause shown, any party seeking to recover costs shall file with the clerk a request to tax costs annexing a bill of costs and indicating the dat and time of taxation.... Any party failing to file a request to tax costs within this thirty (30) day period will be deemed to have waived costs.

Courts have denied reimbursement for taxable expenses when costs are not sought in the timely

*Power Sec.,* 174 F.R.D. 292, 294 (W.D.N.Y. 1997) (reducing the amount sought for photocopies where it was not clear whether the sum requested included multiple copies of the same documents for the convenience of counsel). Accordingly, plaintiff shall have fourteen (14) days from the date of issuance of this report and recommendation to supplement this information. To the extent that defendants object to plaintiffs' $0.25 per copy charge, plaintiffs shall also inform the court as to the basis of this amount.

With respect to the other items requested by plaintiffs, only the $440.00 fee for process servers is taxable, as long as plaintiffs can make a sufficient showing to this Court within fourteen (14) days of the issuance of this report and recommendation that this amount represents "the reasonable and actual fees" of the process server. Local Civil Rule 54.1(c)(10); *see also United States v. Merritt Meridian Constr.,* 95 F.3d at 172. All of the other disbursements requested as costs are not enumerated in Section 1920 and it is respectfully recommended that they be denied.[7] *See United States v. Merritt Meridian Constr.,* 95 F.3d at 172 (holding "computer research is merely a substitute for an attorney's time that is compensable under an application for attorney's fees and is not a separate taxable cost"); *Bollitier v. International Brotherhood of Teamsters,* 735 F.Supp. 623, 629 (D.N.J.1989) (denying transportation and mailing costs in a fee award since these items are not enumerated in Section 1920); *Tanzini v. Marine Midland Bank, N.A.,* No. 95–CV–251, 1997 WL 570502, at *14 (N.D.N.Y. Aug.4, 1997) (declining to award the cost of on-line research where plaintiff did not make any hour/rate showing).

Therefore, it is respectfully recommended that plaintiffs be awarded costs in the amount of $685.75 for the court reporters' fees, as well as $440.00 for process servers and $815.50 for photocopying, provided that the aforementioned showings are made.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

By Report and Recommendation dated December 5, 1997, this Court recommended that plaintiffs be awarded attorneys' fees in the amount of $54,986.25. This Court also recommended that plaintiffs be reimbursed for certain claimed expenses associated with services performed in connection with this litigation, provided that plaintiffs submitted additional documentation in support of their requests. On December 19, 1997, plaintiffs submitted the Declaration of Adreienne L. Saldana Supplementing Plaintiffs' Motion for Attorneys' Fees.

In this supplemental declaration, plaintiffs indicated that they had previously been reimbursed for court reporters' fees in the amount of $685.75 by defendants pursuant to the parties' settlement agreement. Thus, plaintiffs are not requesting this amount as part of their application for costs.

With respect to photocopying expenses, plaintiffs were asked to specify the number of photocopies necessary for use in the case, exclusive of copies provided for counsel or the court. According to counsel's declaration, plaintiffs have counted the number of pages for which reimbursement is appropriate and have determined that there were 847 pages of briefs, exhibits, and other documents required to be copied. Thus, they

---

manner prescribed by the rule. *See, e.g., Petramale v. Local No. 17 of Laborers' Int'l Union of N. America,* No. 81 Civ. 4817, 1992 WL 212605, at *8 (S.D.N.Y. Aug. 25, 1992). Since the closing of a case by settlement is not specifically mentioned in the Rule, this Court finds good cause to extend the time in which to submit a bill of costs.

7. Plaintiffs also request as part of the cost award a $20.00 fee paid to United Lawyers. Since no information regarding the nature of this organization has been provided to this Court, it is respectfully recommended that this amount also be denied, unless there is some further showing that this fee is taxable under Section 1920.

have reduced their request for reimbursement of copying fees to $211.75.

Plaintiffs were also requested to provide an explanation for the $ .25 per page charge pursuant to defendants' objection that the amount was excessive. Ms. Saldana's Declaration explains that this charge is authorized as reasonable under the Employment Retirement Income Security Act ("ERISA"), 29 C.F.R. § 2520.104b–30. While this charge may in fact be considered reasonable under ERISA, this is not an ERISA case; it is a case arising under the Labor Management Reporting and Disclosure Act ("LMRDA"), and the Labor Management Relations Act ("LMRA"), where counsel is seeking fee and cost shifting based on the conferral of a common benefit. Plaintiffs have not provided this Court with any cases discussing the reasonable per page rate for photocopying under either the LMRDA or the LMRA and this Court believes that the rate of $ .25 per page is high based on the actual costs and the rates charged by other firms ·in this locale as demonstrated by other cost applications before this Court. Accordingly, this Court respectfully recommends that the photocopying rate be reduced to $ .15 per page for a total of $127.05 (847 pages at $ .15 per page).

Finally, plaintiffs were requested to document their request for process server fees of $440.00. They have explained that given the court's order to serve defendants within forty-eight hours, they were required to obtain expedited service at the cost of $55.00 per individual, totaling $440.00 for service upon eight individuals. Based on this explanation and a review of the process server's receipt and affidavits of service, this Court finds the request to be reasonable, *see, e.g., Big "R" Food Warehouses v. Local 338 RWDSU*, 896 F.Supp. 292, 299–300 (E.D.N.Y.1995) (finding $55 a reasonable amount), and accordingly, recommends that plaintiffs receive reimbursement for the total amount requested, $440.00.[1]

### Conclusion

For the reasons stated above, it is respectfully recommended that plaintiffs be awarded costs in the amount of $567.05, representing $127.05 in photocopying charges and $440.00 in process server fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

---

1. Plaintiffs have withdrawn their request for the $20.00 fee paid to United Lawyers as non-recompensable under 28 U.S.C. § 1920 or Local Rule 54.10.